880 P.2d 845

STATE of New Mexico,
Plaintiff–Appellee,

v.

Kevin Kean OGDEN, Defendant–
Appellant.

STATE of New Mexico,
Plaintiff–Appellant,

v.

Kevin Kean OGDEN, Defendant–Appellee.

Nos. 21156, 21174, 21157 and 21158.

Supreme Court of New Mexico.

March 14, 1994.

Certiorari Denied Oct. 11, 1994.

See 115 S.Ct. 336.

Sammy J. Quintana, Chief Public Defender, Sheila Lewis, Chief Appellate Defender, Susan Gibbs, Appellate Defender, Santa Fe, for appellant/appellee.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Attorney General Santa Fe, for appellee/appellant.

## OPINION

FROST, Justice.

This is a pretrial interlocutory appeal in a first degree murder prosecution. It raises two central issues: (1) Can a district court make a pretrial determination that there is insufficient factual or legal support to allow the prosecution to seek the death penalty by proving an aggravating circumstance, and (2) is a City of Farmington community service officer a "peace officer" under the statute making the killing of a peace officer an aggravating circumstance in death penalty sentencing, NMSA 1978, Section 31–20A–5 (Repl.Pamp.1990). Resolving both questions in the affirmative, we take this opportunity to establish judicial procedures for pretrial re-

view of death-penalty aggravating circumstances.

Kevin Ogden was indicted for the first degree murder of Farmington Community Service Officer ("CSO") Vicky Chavez. Prosecutors notified Ogden that they would seek the death penalty based upon the aggravating circumstances of murder of a peace officer, Section 31–20A–5(A), and murder of a witness, Section 31–20A–5(G). Ogden filed pretrial motions to dismiss the aggravating circumstances and to dismiss the death penalty as disproportionate. The district court dismissed the aggravating circumstance of killing a peace officer, finding that a CSO is not a peace officer, but denied Ogden's other motions. Both parties challenge the decisions against them by interlocutory appeal to this Court pursuant to SCRA 1986, 12–203 (Repl.Pamp.1992). We reverse the district court's dismissal of the killing of a peace officer aggravating circumstance, remand on the killing of a witness aggravating circumstance, and decline to address the proportionality issue.[1]

## FACTS

In the summer of 1992, Kevin Ogden's mother requested the Farmington Police Department to conduct "close patrol"[2] of her home in Farmington while she was away on vacation. On July 9, 1992, CSO Chavez was allegedly shot and killed by Ogden while she was performing a close patrol of Ogden's mother's house.

The CSO program, created by the Farmington City Police Department, is approved and funded by the Farmington City Council. The purpose of the CSO program is to lighten the workload of city policemen by assigning many of the tasks of police officers to CSOs. The CSOs' duties, all of which were formerly performed by city police officers, include: traffic control at accident scenes; investigation of private property accidents where no injuries are reported; close patrol

---

1. Because we will be addressing the subject of death penalty proportionality review in other cases pending before us, we do not rule on Ogden's motion to dismiss the death penalty as disproportionate in this interlocutory appeal.

2. "Close patrol" by CSOs or police officers is the practice of periodically checking on homes left vacant by vacationing residents to make sure that the vacant residences have not been disturbed or entered by unauthorized persons. Close patrol is usually done at the request of the vacationing resident, and it is thought to deter crime.

of residences; issuance of parking citations; assistance of stranded motorists; service of subpoenas and summons; investigation and report of misdemeanor crimes such as gas fraud, food fraud, other misdemeanor fraud, bicycle theft, simple larcenies such as auto parts larceny, thefts from buildings such as purse thefts from office desks, coin machine larceny, and shoplifting; investigation and report of mail tampering, simple assaults, simple batteries, criminal damage to property, trespass cases, and prowler or peeping tom complaints; and general patrol of the City of Farmington. These mandatory duties of the CSOs are assigned to them by the Farmington Chief of Police.

CSOs are not trained in prisoner contact or control, and they are not trained or certified by the New Mexico Law Enforcement Academy. They are not dispatched to calls where suspect contact is anticipated. For their own protection, CSOs are trained in self-defense, they carry a chemical spray, and they wear bullet-proof vests. They do not carry guns, and they are not authorized to make arrests.

Despite the absence of a sidearm, CSOs are outfitted similarly to Farmington police officers. CSOs wear uniforms resembling the uniforms of policemen, they carry two-way radios, and they drive marked patrol cars with blue, red, and gold emergency lights similar to those driven by regular police officers.

CSOs are under the immediate supervision of the shift sergeants in the general patrol division of the Farmington Police Department. Although no documentary evidence has been submitted to this effect, it seems clear that CSOs draw their salaries from the city's public fisc. When the victim was hired as a CSO, she received a written appointment in the form of a training assignment and was issued a city identification card.[3]

There are no statutes or local ordinances expressly creating or defining the position of CSO. The existence of CSOs is acknowledged by one Farmington ordinance that authorizes CSOs and other city employees, including police officers, park rangers, animal control officers, code compliance officers, and fire chiefs, to issue citations. Farmington, N.M., Code § 10–1–5 (1993).

## DISCUSSION

### I. Pretrial Evaluation of Aggravating Circumstances

The State argues that allowing the district court to test the sufficiency of evidence to support aggravating circumstances before trial improperly interferes with the State's prosecutorial charging discretion and usurps the jury's function in postconviction death-penalty sentencing. Despite the State's contentions, we endorse pretrial evaluation of aggravating circumstances by the district court upon the defendant's motion to dismiss aggravating circumstances.

Our view that it is important to curtail unwarranted death-penalty prosecutions stems from the fact that they are qualitatively and quantitatively distinct from other criminal proceedings. "[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *California v. Ramos*, 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171 (1983); *State v. Henderson*, 109 N.M. 655, 659, 789 P.2d 603, 607 (1990). Allegations of aggravating circumstances "will affect and pervade every stage of the prosecution for murder," *Ghent v. Superior Court*, 90 Cal. App.3d 944, 153 Cal.Rptr. 720, 727 n. 10 (Ct.App.1979), "engender[ing] tremendous costs in terms of time, expense, energy, and emotion," *State v. Matulewicz*, 115 N.J. 191,

---

3. Section 29–1–9 states, "[N]o person shall assume or exercise the functions, powers, duties and privileges, incident and belonging to the office of ... peace officer without first having received his appointment in writing from the lawfully constituted authorities of the state of New Mexico." NMSA 1978, § 29–1–9 (Repl. Pamp.1990). The State claims that Chavez received her written appointment in the form of a training assignment. The district court did not directly address this claim in its rulings, but found that CSOs were issued city identification cards upon hiring, and implied that CSOs were noncommissioned employees. Ogden does not argue that CSOs are not peace officers because they are not commissioned, and he apparently did not argue this point in the district court.

557 A.2d 1001, 1008 (1989) (Handler, J., concurring).

■ Capital felony prosecutions and sentencing command extra judicial resources, including an additional, separate sentencing proceeding to evaluate aggravating and mitigating circumstances with direct appeal of a death sentence to the New Mexico Supreme Court. NMSA 1978, §§ 31–20A–1 to –6 (Repl.Pamp.1990 & Cum.Supp.1993) (Capital Felony Sentencing Act); see N.M. Const. art. VI, § 2 (permitting direct appeal to New Mexico Supreme Court following death penalty conviction). In addition, the state in capital prosecutions is entitled to a death-qualified jury. See *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *State v. Trujillo*, 99 N.M. 251, 252, 657 P.2d 107, 108 (1982). Whether or not death-qualified juries are more conviction-prone or give the state a strategic advantage, see *Lockhart*, 476 U.S. at 167–73, 106 S.Ct. at 1761–65; *Trujillo*, 99 N.M. at 252, 657 P.2d at 108, they clearly absorb more judicial resources in voir dire.

Other aspects of capital prosecutions make them uniquely complex and demanding. More skilled and experienced prosecutors and defenders are required; extensive investigation into the defendant's background for proof of mitigating circumstances must be done, *State v. McCrary*, 97 N.J. 132, 478 A.2d 339, 344 (1984); and there will be a proliferation of pretrial motions, applications, and hearings, consuming significantly more judicial resources than noncapital prosecutions, see *Matulewicz*, 557 A.2d at 1008, (Handler, J., concurring).

■ We have the inherent authority to establish a pretrial procedure for evaluating aggravating circumstances under our power of superintending control over lower state courts. N.M. Const. art. VI, § 3; *Hudson v.*

State, 89 N.M. 759, 760, 557 P.2d 1108, 1109 (1976) (stating that our superintending control includes "the power to regulate and to promulgate rules regarding pleadings, practice, and procedure affecting the judicial branch of government"), *cert. denied*, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977). This new procedure will conserve judicial resources and ensure fairer trials for capital defendants.[4]

■ The district court properly conducted pretrial review of the murder of a peace officer aggravating circumstance. Pursuant to our superintending authority, we authorize district courts to perform pretrial review of death-penalty aggravating circumstances as explicated herein. District courts have the power to do so under their inherent authority to conduct felony trials. See N.M. Const. art. VI, § 13; *State v. Garcia*, 93 N.M. 51, 53, 596 P.2d 264, 266 (1979).

■ A defendant who has been notified that the State will seek the death penalty may move to dismiss an aggravating circumstance before trial. Pretrial rulings on the support of aggravating circumstances can present questions of fact, law, or mixed fact and law, and this will affect the standard of review. When the applicability of an aggravating circumstance presents a question of law capable of determination without trial (like the peace officer aggravating circumstances in this case), SCRA 1986, 5–601 (Repl.Pamp.1992) applies and the district court should rule on the motion consistent therewith.[5] A motion to dismiss an aggravating circumstance that presents a purely legal question should be granted when the district court finds that the aggravating circumstance does not apply as a matter of law.

The issue of whether a Farmington CSO qualifies as a "peace officer" under the ag-

---

4. Courts in other states have approved pretrial assessment of aggravating circumstances. We found the following cases most instructive: *Ghent v. Superior Court*, 90 Cal.App.3d 944, 153 Cal.Rptr. 720 (Ct.App.1979); *State v. McCrary*, 97 N.J. 132, 478 A.2d 339 (1984); *State v. Matulewicz*, 115 N.J. 191, 557 A.2d 1001 (1989); *State v. Gaines*, 332 N.C. 461, 421 S.E.2d 569 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1866, 123 L.Ed.2d 486 (1993).

5. SCRA 1986, 5–601, "Pretrial motions, defenses and objections," states in part, **"Defenses and objections which may be raised.** Any *defense*, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion."

gravating circumstance statute is a purely legal question. As an objection that was capable of determination without trial on the merits, Ogden appropriately moved to dismiss this aggravating circumstance before trial pursuant to SCRA 5–601.

 When the applicability of an aggravating circumstance raises a question of fact or a mixed question of fact and law, the district court should grant the defendant's motion to dismiss the aggravating circumstance only when it finds that there is not probable cause to support the aggravating circumstance. The burden of proof is on the State; the State will defeat the motion if it proves that there is probable cause to believe an aggravating circumstance is present. Pretrial review of aggravating circumstances is intended to screen out only those cases in which the State does not have any significant factual or legal basis for pursuing the death penalty, and the probable cause standard of review should reflect this objective.[6]

 The district court may conduct a limited evidentiary hearing on a pretrial motion to dismiss aggravating circumstances when necessary. Such a hearing should be summary in nature; we have no intention of allowing a trial within a trial on a pretrial challenge to aggravating circumstances. Testimony may be presented, but it usually should not be necessary. *See McCrary*, 478 A.2d at 345. Formal rules of evidence should be relaxed, and hearsay will be admissible. *See id.* at 346 (endorsing use of hearsay in pretrial hearing on motion to dismiss aggravating circumstances while noting that "hearsay and other informal proofs are permissible in determining issues that implicate important rights"); *see also Zamora v. Creamland Dairies, Inc.*, 106 N.M. 628, 632, 747 P.2d 923, 927 (Ct.App.1987) ("[H]earsay evidence may be used to establish probable cause.") (citing *State v. Deltenre*, 77 N.M. 497, 501, 424 P.2d 782, 785 (1966), *cert. denied*, 386

U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967)). These hearings can be abbreviated because the district court's task is limited to determining if the State has demonstrated that the aggravating circumstance is supported by probable cause. The district court must not weigh the evidence or consider evidence of mitigating circumstances.[7]

 Any pretrial determination by a district court that (1) there is not probable cause to support an aggravating circumstance, or (2) an aggravating circumstance applies or does not apply as a matter of law will ordinarily be an order or decision involving a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from such an order or decision may materially advance the ultimate termination of the litigation. Thus, the district court will ordinarily certify such pretrial orders for interlocutory appeal pursuant to SCRA 1986, 12–203 (Repl. Pamp.1992). Whether we decide to accept the interlocutory appeal is, of course, within our discretion. *State v. Hernandez*, 95 N.M. 125, 126, 619 P.2d 570, 571 (Ct.App.1980). On appeal, we will review questions of law de novo, and we will review questions of fact to see whether the district court correctly evaluated probable cause to support the aggravating circumstance.

 Pretrial dismissal of aggravating circumstances unsupported by probable cause will not improperly interfere with prosecutorial charging discretion. While prosecutorial discretion in charging is quite broad, it is ordinarily limited by the requirement that the state must demonstrate probable cause that the defendant committed a particular crime. In *Wayte v. United States*, the Supreme Court stated, "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before

---

**6.** Dismissal of an aggravating circumstance is without prejudice if, pretrial, additional supporting evidence surfaces which would support an aggravating circumstance. Ogden conceded that dismissal of an aggravating circumstance would be without prejudice.

**7.** Ogden conceded in his Answer Brief that pretrial evaluation of aggravating circumstances could be conducted through summary procedures, without "the full protection of constitutional rights and rules of evidence provided in jury trials," and, in some circumstances, without a pretrial hearing.

a grand jury, generally rests entirely in his discretion." *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978)). Pretrial review of aggravating circumstances for support by probable cause does not disturb this standard. Further, in New Mexico, an aggravating circumstance is not an element of the crime of capital murder, *State v. Compton*, 104 N.M. 683, 693, 726 P.2d 837, 847, *cert. denied*, 479 U.S. 890, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986), and aggravating circumstances are not required to be formally charged in an indictment or ruled on by the grand jury for the existence of probable cause. *State v. Morton*, 107 N.M. 478, 479–81, 760 P.2d 170, 171–73 (Ct.App.1988).[8] The pretrial procedure for evaluating aggravating circumstances that we endorse today is currently the only screening mechanism applicable to an allegation of aggravating circumstances, and it imposes no more of a restriction upon prosecutorial charging discretion than is present when a typical crime is charged. Still, district courts should be aware of the potential for impeding prosecutorial charging discretion, and they should confine their review as we have instructed to prevent this.

██ The limited nature of pretrial evaluation of aggravating circumstances should also preclude elaborate or duplicative pretrial litigation or usurpation of the jury's function in capital sentencing. We are aware that Pennsylvania courts prohibit pretrial judicial classification of a trial as capital or noncapital to prevent infringement of the jury's statutory role in evaluating capital sentencing aggravating and mitigating circumstances. *See, e.g., Commonwealth v. Tomoney*, 488 Pa. 324, 412 A.2d 531, 533–34 (1980).

The Pennsylvania case establishing this view, however, is distinguishable; the district court in that case did not employ a limited standard of review like the one we prescribe today, and it engaged in actual weighing of mitigating circumstances. *See Commonwealth ex rel. Fitzpatrick v. Bullock*, 471 Pa. 292, 370 A.2d 309, 313 (1977). Our circumscribed procedure of screening for probable cause simply will not allow the type of pretrial review which concerned the courts of Pennsylvania, and under our procedure, the sentencing judge or jury will still fully perform its statutory task of assessing and weighing aggravating and mitigating circumstances consistent with our capital sentencing statute, NMSA 1978, § 31–20A–2 (Repl. Pamp.1990).[9]

## II. Applicability of Murder of a Peace Officer Aggravating Circumstance

Section 31–20A–5 enumerates aggravating circumstances to be considered in capital sentencing, which can result in imposition of the death penalty under Section 31–20A–2. Under Section 31–20A–5(A), the fact that "the victim was a peace officer who was acting in the lawful discharge of an official duty when he was murdered" is an aggravating circumstance. Section 31–20A–5 and other sections of Chapter 31, Article 20A (entitled "Capital Felony Sentencing") do not define "peace officer." *See* NMSA 1978, §§ 31–20A–1 to –6 (Repl.Pamp.1990 & Cum. Supp.1993).

Other New Mexico statutes do define "peace officer," but these statutory definitions are not specifically applicable. The New Mexico Criminal Code, NMSA 1978, Sections 30–1–1 to –28–3 (Repl.Pamp.1984 & Cum.Supp.1993) et al., and the New Mexico Criminal Procedure Act, NMSA 1978, Sec-

---

8. Our ruling today does not conflict with the holding of *Morton*, 107 N.M. at 481, 760 P.2d at 173, and it should not be construed to diminish *Morton*'s validity. Though the State can now be required under certain circumstances to prove pretrial that death-penalty aggravating circumstances are supported by probable cause, the State is still not required to prove to the grand jury as a matter of course that aggravating circumstances are supported by probable cause, *see id.*

9. We reiterate the admonition of the New Jersey Supreme Court in *McCrary*, 478 A.2d at 346, discouraging groundless motions to dismiss aggravating circumstances. Our decision today should not be construed to encourage frivolous pretrial motions to dismiss, and we stress, like the New Jersey Supreme Court, that such motions should be made only when allegations of aggravating circumstances are plainly without support. *Id.*

tions 31–1–1 to –3–9 (Repl.Pamp.1984 & Cum.Supp.1993), both contain definitions of "peace officer." The Criminal Code was enacted in 1963. 1963 N.M.Laws, ch. 303. Although most of the Criminal Code is contained in Chapter 30, some laws enacted as part of the Criminal Code in 1963 are compiled in Chapter 31. *See* Compiler's Note to NMSA 1978, § 30–1–1 (Repl.Pamp.1984). Because Section 31–20A–5 was not passed until 1979, it is not one of those Chapter 31 sections that are part of the Criminal Code due to original placement there. In addition, the Criminal Code includes later acts in which the legislature specifically stated its intention to add to the Criminal Code. *See* Compiler's Note to NMSA 1978, § 30–1–1 (Repl.Pamp.1984). Because the legislature did not indicate that Section 31–20A–5 is part of the Criminal Code, the Criminal Procedure Act, or any other act in particular, *see* 1979 N.M.Laws, ch. 150, § 6; 1981 N.M.Laws ch. 23, § 1, Section 31–20A–5 is not technically part of the Criminal Code nor the Criminal Procedure Act. Therefore, neither statutory definition of "peace officer" technically controls. *See, e.g., State ex rel. Newsome v. Alarid,* 90 N.M. 790, 797, 568 P.2d 1236, 1243 (1977) (finding statutory definition of "public records" inapplicable to different statute enacted separately). While this is probably due to legislative oversight, the fact that there is no directly applicable definition for "peace officer" in the aggravating circumstances statute turns our focus to rules of statutory construction.

 The principal command of statutory construction is that the court should determine and effectuate the intent of the legislature, *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988), using the plain language of the statute as the primary indicator of legislative intent, *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary. *State ex rel. Reynolds v. Aamodt,* 111 N.M. 4, 5, 800 P.2d 1061, 1062 (1990).

 Statutes defining criminal conduct should be strictly construed, and doubts about construction of criminal statutes are resolved in favor of lenity. *Santillanes v. State,* 115 N.M. 215, 221, 849 P.2d 358, 364 (1993). Statutes authorizing more severe punishment should be strictly construed because they are highly penal, *State v. Keith,* 102 N.M. 462, 465, 697 P.2d 145, 148 (Ct. App.), *cert. denied,* 102 N.M. 492, 697 P.2d 492 (1985), and if it is not clear that the legislature intended an enhanced sentence, no enhancement will be applied, *Swafford v. State,* 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991). The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute. *See State v. Edmondson,* 112 N.M. 654, 658, 818 P.2d 855, 859 (Ct.App.), *cert. quashed,* 112 N.M. 641, 818 P.2d 419 (1991).

 There are limits, however, to the rules of lenity and strict construction. A criminal statute is not " 'ambiguous' for purposes of lenity merely because it [is] *possible* to articulate a construction more narrow than that urged by the Government." *Edmondson,* 112 N.M. at 658, 818 P.2d at 859 (quoting *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990)). Nor does a division of judicial authority regarding the proper construction of a particular statute automatically trigger lenity. *Id.* Rather, lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Id.* (quoting *Moskal,* 498 U.S. at 108, 111 S.Ct. at 465).

 Likewise, strict construction is only one factor influencing interpretation of punitive legislation, and it should not be used to defeat the policy and purposes of a statute. 3 Norman J. Singer, *Sutherland Statutory Construction* § 59.06 (5th ed. 1992). "[T]he rule of strict construction does not require that penal statutes be given the 'narrowest meaning' that the words of the statute will allow." *United States v. Cardenas,* 864 F.2d 1528, 1535 (10th Cir.), *cert. denied,* 491 U.S.

909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). Instead, the language of penal statutes should be given a reasonable or common sense construction consonant with the objects of the legislation, and the evils sought to be overcome should be given special attention. 3 *Sutherland, supra,* § 59.06.

Another rule of statutory construction is that statutes in pari material should be read together to ascertain legislative intent. *Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983). Statutes on the same general subject should be construed by reference to each other, *see Runyan v. Jaramillo,* 90 N.M. 629, 631, 567 P.2d 478, 480 (1977), the theory being that the court can discern legislative intent behind an unclear statute by reference to similar statutes where legislative intent is more clear. These rules also promote consistency in judicial interpretation of similar statutes.

The Criminal Code states: "As used in the Criminal Code ... 'peace officer' means any public official or public officer [10] vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes[.]" NMSA 1978, § 30–1–12(C) (Repl. Pamp.1984). It is noteworthy that the Criminal Code expressly limits its definition of "peace officer" to use in the Criminal Code, thereby precluding direct applicability of the Criminal Code definition to statutes like Section 31–20A–5(A).

The Criminal Procedure Act states:

"Unless a specific meaning is given, as used in the Criminal Procedure Act [31–1–1 to 31–3–9 NMSA 1978] ... 'police officer,' 'law enforcement officer,' 'peace officer' or 'officer' means any full-time salaried officer who *by virtue of his office or public employment* is vested by law with the duty to maintain the public peace[.]"

NMSA 1978, § 31–1–2(F) (Repl.Pamp.1984) (emphasis added).

The district court and the parties assumed that the definition of peace officer in the Criminal Code applied. This assumption is incorrect; as discussed above, no particular statutory definition applies to "peace officer" in the aggravating circumstance statute, Section 31–20A–5(A). Two New Mexico cases, *State v. Rhea,* 94 N.M. 168, 608 P.2d 144 (1980), and *State v. Tabaha,* 103 N.M. 789, 714 P.2d 1010 (Ct.App.1986), apply the Criminal Code's definition of "peace officer," Section 30–1–12(C), to determine if the defendant committed battery upon a police officer. Because the crime of battery upon a police officer, Section 30–22–24(A), is part of the Criminal Code, the use of the Criminal Code definition in these cases was correct. These cases do not address the definition of "peace officer" as used in the aggravating circumstance statute, so these cases do not stand for an implicit judicial determination that the Criminal Code definition applies to Section 31–20A–5(A).

The district court concluded that CSOs are not "peace officers" because they are not expressly vested by statute or ordinance with the duty to maintain public order or to make arrests. The district court interpreted "vested by law" in the definition of "peace officer" to require the presence of legislation, ordinance, or other statutory mandate specifically stating that CSOs are peace officers, or specifically giving CSOs the powers or duties of peace officers. Because CSOs are not recognized statutorily except in one city ordinance giving them the power to issue citations, the district court decided that they are not "vested by law" as required by the Criminal Code definition.

The district court may not have realized that "peace officer" in Section 31–20A–5(A) is not statutorily defined. When a statutory term is not defined, it must be given its plain and ordinary meaning. *See Aamodt,* 111 N.M. at 5, 800 P.2d at 1062; 2A *Sutherland, supra,* § 47.04 ("If it is expected that a particular term would be defined in the body of the statute, but is not, then the word will

---

**10.** The Criminal Code defines "public officer" as "any elected or appointed officer of the state or any of its political subdivisions, and whether or not he receives remuneration for his services."

NMSA 1978, § 30–1–12(I) (Repl.Pamp.1984). The defendant does not contend that the victim was not a "public officer."

be assumed to have its ordinary and popularly understood meaning."). The popularly understood meaning of "peace officer" is a police officer, sheriff, or other law enforcement official who keeps the peace by patrolling public areas and enforcing the law. The district court concluded that "the public has been given the impression that CSO's by their uniforms, their vehicles, and their demeanor are qualified and fully trained police officers with the attendant authority and duty to maintain public order." Thus, based upon the CSOs' duties, authority, and appearance, CSOs are "peace officers" under the plain and ordinary meaning of the term.

The purpose of Section 31–20A–5(A) is to deter the killing of law enforcement officers by enhancing the penalty for committing that crime. The aggravating circumstance statute creates the possibility that one who kills a peace officer will be sentenced to death, and the deterrent value of this penalty enhancement is thought to provide extra protection to law enforcement officers, thereby encouraging their service. Cf. State v. Compton, 104 N.M. 683, 693, 726 P.2d 837, 847 (stating that the legislature intended to protect state officers and state functions by adopting the aggravating circumstance of killing a peace officer), cert. denied, 479 U.S. 890, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986); State v. Luna, 99 N.M. 76, 77, 653 P.2d 1222, 1223 (Ct.App.) (stating that clear legislative intent behind penalty enhancement for aggravated burglary is deterrence), cert. denied, 99 N.M. 148, 655 P.2d 160 (1982). A criminal statute must be interpreted in light of the harm or evil it seeks to prevent. 3 Sutherland, supra, § 59.06. Addressing the purpose behind the aggravating circumstance of killing a peace officer, the Supreme Court of North Carolina stated: "The presence of uniform officers in places susceptible to breaches of the peace deters unlawful acts and conduct by patrons in those places. The public knows the uniform and the badge stand for the authority of the government." State v. Gaines, 332 N.C. 461, 421 S.E.2d

569, 575 (1992) (quoting Duncan v. State, 163 Ga.App. 148, 294 S.E.2d 365, 366 (1982)), cert. denied, —— U.S. ——, 113 S.Ct. 1866, 123 L.Ed.2d 486 (1993).

> When in the performance of his duties, a law enforcement officer is the representative of the public and a symbol of the rule of law. The murder of a law enforcement officer [engaged in the performance of his duties] in the truest sense strikes a blow at the entire public—the body politic—and is a direct attack upon the rule of law which must prevail if our society as we know it is to survive.

Gaines, 421 S.E.2d at 575 (quoting State v. McKoy, 323 N.C. 1, 372 S.E.2d 12, 37 (1988), cert. granted, 489 U.S. 1010, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989), and vacated, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990)). Protecting CSOs under the aggravating circumstance statute clearly furthers the purpose of the statute. CSOs are threatened in their positions in the same way that police officers are, except that CSOs have less frequent contact with suspects who are known to be dangerous. (Because CSOs do general patrol, they have some contact with dangerous individuals who are not known in advance to be dangerous, as in this case. We do not think the legislature meant to deny CSOs protection in such situations.)

Furthermore, by using the term "peace officer," Section 31–20A–5(A) demonstrates the legislature's intention to protect a broader category of law enforcement officers than only police officers.[11] A court should not hobble statutory interpretation with the requirement that every circumstance meant to be covered must be specifically mentioned in the statute. United States v. Bates, 617 F.2d 585, 587 n. 7 (10th Cir.1980). The killing-of-a-peace-officer aggravating circumstance is designed to make criminals think twice before firing at a dark uniform, including that of a CSO.

Thus, using two important rules of construing criminal statutes, the plain meaning

---

11. The fact that the legislature amended the correctional officers' statute to make juvenile correctional officers "peace officers" after the Court of Appeals held that they were not "peace officers" in Tabaha, 103 N.M. at 791, 714 P.2d at 1012, is further evidence that the legislature intended § 31–20A–5(A) to be interpreted broadly. Cf. State v. Gutierrez, 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App.), cert. denied, 115 N.M. 545, 854 P.2d 872 (1993).

rule and the rule that criminal statutes should be construed to further their purpose, CSOs should be included within the definition of "peace officer" in Section 31–20A–5(A). Turning to the two definitions of "peace officer" in New Mexico criminal statutes, analysis further supports the conclusion that CSOs are "peace officers."

The definitions of "peace officer" in Section 31–1–2 and Section 30–1–12 are substantially similar, though the definitions use slightly different language. There is no indication from placement in the statutes that either definition is more likely than the other to have been intended by the legislature to apply to Section 31–20A–5(A). Because both definitions convey basically the same idea and because there is no clear indication that one definition should be preferred, both definitions should be used to inform interpretation of "peace officer."

Under the plain meaning of Section 31–1–2(F), CSOs are peace officers because they are "full-time salaried officer[s] who by virtue of [their] office or public employment [are] vested by law with the duty to maintain the public peace[.]" In the Section 31–1–2 definition, "by virtue of their office" grammatically modifies "are vested by law." This shows the fallacy of the district court's conclusion that "vested by law" requires formal, specific legislative action. Under this definition, the fact that CSOs hold their public employment is what vests them by law with the duty to maintain public order. There is no need for specific legislation stating that the CSOs are vested by law to maintain public order. Such a judicial construction employs an artificial and unduly narrow definition of the term "vested by law," and it incorrectly deprives the legislature of the ability to enact broad, general statutes. Instead, "vested by law" should be read to mean "empowered by the sovereign authority of the government." This interpretation is much more natural. The fact that the CSO program is funded and approved by the Farmington City Council and run by the Farmington Police Department means that CSOs are vested by law to maintain public order. CSOs are literally clothed with the authority of the State. There are no New Mexico precedents requiring adoption of the district court's constricted interpretation.

Rather than over-literalize the "vested by law" language in the statutory definitions, our emphasis should focus on the maintenance of public order or peace requirement, the more substantive and limiting language of the definitions. Because the purpose of the aggravating circumstance of killing a peace officer is to protect those who maintain public order, it makes more sense to focus on this aspect of the definition. Furthermore, our Court has stated, "To determine whether positions are of a law enforcement nature, this Court will look at the character of the principal duties involved...." *Anchondo v. Corrections Dep't,* 100 N.M. 108, 110, 666 P.2d 1255, 1257 (1983); *see Tabaha,* 103 N.M. at 791, 714 P.2d at 1012 (stating that "peace officer" under Section 30–1–12(C) is defined in terms of duty). Such an approach sufficiently limits the definition of "peace officer" to protection of precisely those intended to be protected. *See, e.g., Vigil v. Martinez,* 113 N.M. 714, 721, 832 P.2d 405, 412 (Ct.App.1992) (construing "maintain public order" as it has been traditionally interpreted in the law enforcement context to refer to the function of police officers, sheriff's deputies, and other traditional law enforcement officers); *People v. Perry,* 27 Ill.App.3d 230, 327 N.E.2d 167, 170–71 (Ct.1975) (concluding that private security guards and jailers are not "peace officers" because their duty to maintain public order is confined to a specific time and place).

It seems clear that CSOs are charged with the duty to maintain public peace or order. Although their duties exclude some of the duties of police officers, all of their responsibilities are of a peace-keeping nature. Although CSOs' contact with dangerous criminals is limited, they are heavily involved with protection against property crime. And although property crime is usually considered less serious by our penal laws than personal injury crime, this does not mean that prevention of and protection against property crime is not a central component of maintaining public order.

In sum, there is no statutory definition of "peace officer" directly applicable to the aggravating circumstance statute. The

plain meaning rule, the rule that criminal statutes should be construed to redress the evil they are intended to prevent, and the plain meaning of the two statutory definitions of "peace officer" indicate that CSOs are peace officers under Section 31–20A–5(A).

### III. Applicability of Murder of a Witness Aggravating Circumstance

The district court denied Ogden's motion to dismiss the aggravating circumstance of murder of a witness, but the basis of its decision is not clear from the court's order. We therefore remand this matter to the district court so that it may revise its order or conduct further proceedings consistent herewith.

### CONCLUSION

We reverse dismissal of the killing of a peace officer aggravating circumstance, remand the order denying the motion to dismiss the killing of a witness aggravating circumstance, and decline to review the order denying the motion to dismiss the death penalty as disproportionate.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, BACA and FRANCHINI, JJ., concur.