2004-NMSC-021

93 P.3d 1264

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Ruben FLORES, Defendant–Appellee.**

**No. 27,845.**

Supreme Court of New Mexico.

June 3, 2004.

Rehearing Denied July 8, 2004.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Jeffrey J. Buckels, Assistant Public Defender, Albuquerque, NM, for Appellee.

Brian A. Pori, Albuquerque, NM, for Amicus Curiae, New Mexico Criminal Defense Lawyers Association.

James W. Ellis Albuquerque, NM, Amicus Curiae.

## OPINION

CHÁVEZ, Justice.

{1} The United States Supreme Court held in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), that execution of persons with mental retardation violates the Eighth Amendment prohibition against cruel and unusual punishment. Eleven years before *Atkins* was decided, our Legislature prohibited the execution of defendants with mental retardation and established a procedure for ascertaining those capital defendants who are ineligible for the death penalty on that basis. *See* NMSA 1978, § 31–20A–2.1 (1991). The statutory provision outlining the procedure, Section 31–20A–2.1(C), states that, for purposes of precluding the death penalty in a capital case, the trial court "shall hold a hearing, prior to conducting the sentencing proceeding," and the penalty of death shall be precluded "[i]f the court finds, by a preponderance of the evidence," that the defendant has mental retardation. This appeal presents three issues: (1) whether, after *Atkins*, the

absence of mental retardation is an element of a capital crime which the State must prove to a jury beyond a reasonable doubt; (2) whether our statute requires the determination of mental retardation to be delayed until the guilt-innocence phase of the trial is complete; and (3) whether the defendant is entitled to present evidence of mental retardation to the jury at sentencing and how to give effect to such a finding.

{2} Defendant in this case has alleged that he has mental retardation and that he is therefore ineligible for the death penalty under *Atkins* and under Section 31–20A–2.1(B). The State, which seeks the death penalty against Defendant, appeals from a district court order declaring the statutory procedure unconstitutional on the following grounds: (1) the statutory procedure does not require a jury to find beyond a reasonable doubt that the defendant does not have mental retardation, as required by the Sixth Amendment under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (2) the statutory procedure does not allow for a pretrial judicial determination of the defendant's alleged mental retardation, as required by language in *Atkins* suggesting that if the determination is not made pretrial, the reliability and fairness of the ensuing capital trial may be jeopardized where the defendant has mental retardation. *See Atkins*, 536 U.S. at 306–07, 122 S.Ct. 2242.

{3} We hold, first, because mental retardation is a factual issue that operates to reduce rather than to increase the maximum punishment permitted by a verdict of guilt, the Sixth Amendment does not require the question of mental retardation to be decided by a jury beyond a reasonable doubt. Therefore, the procedure prescribed in Section 31–20A–2.1(C) does not violate the Sixth Amendment right to trial by jury as articulated in *Ring*. Second, we hold that, while a pretrial determination is not constitutionally required by *Atkins*, a permissible reading of Section 31–20A–2.1(C) does not preclude a pretrial determination of a defendant's alleged mental retardation. In order to ameliorate the con-

cerns addressed in *Atkins* relating to the reliability and fairness of capital trials where mental retardation is at issue and to address legitimate concerns of judicial economy, we conclude that a hearing to determine mental retardation under Section 31–20A–2.1(C) must be held pretrial if that issue is raised by the defendant at that time. Finally, reading Section 31–20A–2.1(C) both in light of *Atkins* and in light of the constitutional requirement under *Penry v. Lynaugh*, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), that a jury be permitted to give mitigating effect to a finding of mental retardation, we conclude the defendant is entitled to present the issue of mental retardation to the sentencing jury as a conclusive mitigating factor.

## PROCEDURAL HISTORY

{4} Defendant was charged with first-degree murder with aggravating circumstances, and the State filed notice to seek the death penalty. Defendant raised an issue regarding his competency to stand trial, and, following two psychiatric evaluations and in accordance with a stipulation by the parties, the trial court found Defendant both incompetent to stand trial and dangerous, pursuant to NMSA 1978, Section 31–9–1.2 (1999). The trial court also indicated that "defendant may have mental retardation." The court then committed Defendant to Las Vegas Medical Center for treatment. After three months of treatment, the Medical Center determined he was competent to stand trial. Following another competency hearing the trial court agreed and found that Defendant was competent to stand trial.

{5} Defendant filed a pretrial motion to dismiss the death penalty on the basis of Defendant's alleged mental retardation. The trial court ruled Defendant's motion was premature, concluding that Section 31–20A–2.1(C) requires the determination of mental retardation to occur only after the guilt-innocence phase of the trial is complete. Defendant then filed another motion requesting a jury determination of his mental retardation, in addition to a pretrial judicial determination of that issue. In that motion, Defendant argued that the hearing provided in Section

31–20A–2.1(C) must be conducted before trial, analogizing it to the Due Process requirement that the legal issue of the voluntariness of a confession be resolved prior to its admission at trial. *See Jackson v. Denno,* 378 U.S. 368, 395, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Defendant also argued that a jury determination of the issue beyond a reasonable doubt was required by *Ring,* 536 U.S. at 609, 122 S.Ct. 2428, which held that any factual finding that serves to increase the punishment from a prison term to capital punishment must be found by a jury beyond a reasonable doubt. After a hearing on the issue, the trial court agreed and issued a written order concluding that "the timing of the determination of mental retardation" under Section 31–20A–2.1(C), as well as "the procedure by which mental retardation is determined"—providing for the trial court, not the jury, to make the determination—are unconstitutional. The trial court then certified the issue for interlocutory appeal. The Court of Appeals accepted interlocutory appeal and certified the matter to this Court.

## DISCUSSION

### I. Mental Retardation as an Element under *Ring*

■ {6} Defendant first argues the trial court correctly concluded that a jury determination of the issue of mental retardation, based on the beyond-a-reasonable-doubt standard of proof, is required by the intersection of *Atkins* and *Ring. Ring* involved a Sixth Amendment challenge to Arizona's capital-punishment scheme, in which the judge, not the jury, was permitted to impose the death penalty if the judge found at least one aggravating circumstance and no mitigating circumstances sufficient to warrant leniency. *Ring,* 536 U.S. at 592–93, 122 S.Ct. 2428. Applying its earlier decision in *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348—holding that the Sixth Amendment requires any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the statutory maximum to be proved to a jury beyond a reasonable doubt—the Supreme Court in *Ring* held that each aggravating factor in a capital prosecution serves as the functional equivalent of an element of a greater offense under *Apprendi* and therefore must be proved to a jury beyond a reasonable doubt. *Ring,* 536 U.S. at 609, 122 S.Ct. 2428. Defendant argues that, after *Atkins,* mental retardation is a factual issue upon which a defendant's eligibility for death depends, and that, applying *Ring,* the absence of mental retardation is the functional equivalent of an element of a greater offense and therefore must be proved to a jury beyond a reasonable doubt.

{7} We do not believe the absence of mental retardation is an element of a capital offense for purposes of analysis under *Ring. Apprendi* and *Ring* do not apply to cases where the factual finding at issue operates to lower the maximum allowable punishment rather than to raise the punishment above the statutory maximum. *Apprendi* carefully distinguished "between facts in aggravation of punishment and facts in mitigation":

> If facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.

530 U.S. at 490 n. 16, 120 S.Ct. 2348 (citation omitted). Here, a finding of mental retardation operates to reduce the maximum possible sentence from capital punishment to life in prison, and therefore the absence of mental retardation is not an element that must be proved by the State beyond a reasonable doubt.

{8} We note this conclusion is consistent with opinions from other state and federal courts that have examined this issue. The Georgia Supreme Court has concluded that "the absence of mental retardation is not the functional equivalent of an element of an

offense such that determining its absence or presence requires a jury trial under *Ring*." *Head v. Hill*, 277 Ga. 255, 587 S.E.2d 613, 620 (2003). The Texas Court of Criminal Appeals has similarly concluded that under *Ring*, "[a] lack of mental retardation is not an implied element of the crime of capital murder which the State is required to prove before it may impose a sentence above the maximum statutory punishment for that crime." *Ex parte Briseno*, 135 S.W.3d 1, 4 (Tex.Crim.App.2004). Finally, the United States Court of Appeals for the Fifth Circuit has concluded that "neither *Ring* and *Apprendi* nor *Atkins* render the absence of mental retardation the functional equivalent of an element of capital murder which the state must prove beyond a reasonable doubt." *In re Johnson*, 334 F.3d 403, 405 (5th Cir.2003). We agree with these authorities and conclude that the Sixth Amendment does not require the issue of a defendant's mental retardation in a capital prosecution to be proved to a jury beyond a reasonable doubt. We therefore conclude the statutory procedure is not unconstitutional on this basis.[1]

## II. Pretrial Determination of Mental Retardation

■ {9} Defendant next argues the trial court correctly concluded Section 31–20A–2.1(C) is unconstitutional under *Atkins* because it does not permit a pretrial determination of the issue of mental retardation. Section 31–20A–2.1(C), which outlines the procedure for a determination of mental retardation in a capital prosecution, states in relevant part:

Upon motion of the defense requesting a ruling that the penalty of death be precluded under this section, the court shall hold a hearing, prior to conducting the sentencing proceeding.... If the court finds, by a preponderance of the evidence, that the defendant is mentally retarded, it shall

sentence the defendant to life imprisonment.

The State argues that this statutory language requires that the hearing take place only after the guilt-innocence phase of the trial is complete. While we agree that the language, "it shall sentence the defendant to life imprisonment," tends to suggest that the hearing must be held after the guilt-innocence phase is complete, we do not agree that this language expressly precludes an earlier hearing. Section 31–20A–2.1(C) does not by its own terms preclude a pretrial motion by the defendant, nor does it restrict the timing of the hearing itself, except that it shall be held "prior to conducting the sentencing proceeding." As a result, ambiguity exists regarding whether a pretrial hearing is contemplated by the statute.

■ {10} We believe that a more flexible reading of Section 31–20A–2.1(C) is appropriate in light of the flexibility of the related procedure for determining whether the defendant has mental retardation for purposes of competency to stand trial. *See* NMSA 1978, § 31–9–1.6(A) (1999); Rule 5–602(B)(1) NMRA 2004 (providing for a determination "at any stage of the proceedings"). "[S]tatutes which relate to the same class of things are considered to be in pari materia, and, if possible by reasonable construction, both are to be so construed that effect is to be given to every provision of each." *State ex rel. State Park & Recreation Comm'n v. New Mexico State Auth.*, 76 N.M. 1, 18, 411 P.2d 984, 996 (1966) (citation omitted). Section 31–9–1.6 articulates the procedure for determining whether a defendant is incompetent to stand trial as a result of mental retardation, the statutory definition of which is identical to the definition of mental retardation under Section 31–20A–2.1(A): "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior." *See* § 31–9–1.6(E). Under both

1. Not argued or briefed to this Court is whether placing the burden on the defendant and applying the preponderance-of-the-evidence standard articulated in Section 31–20A–2.1(C) comports with the requirements of the Due Process Clause of the Fourteenth Amendment or of the Due Process Clause of Article II, Section 18 of the New Mexico Constitution; accordingly, we do

not address these issues at this time. *See generally Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (outlining general rule that courts will not address constitutional issues unless necessary to the disposition of the case).

Section 31–9–1.6 and Section 31–20A–2.1, the hearing to determine mental retardation is triggered by a motion of the defendant, *compare* § 31–9–1.6(A) *with* § 31–20A–2.1(C); the burden of persuasion is on the defendant by a preponderance of the evidence, *compare* § 31–9–1.6(B) *with* § 31–20A–2.1(C); and an intelligence quotient of seventy or below establishes a presumption of mental retardation, *compare* § 31–9–1.6(E) *with* § 31–20A–2.1(A).

■ {11} A hearing to determine competency to stand trial may be invoked at any stage of the proceedings, "[w]henever it appears that there is a question as to the defendant's competency to proceed in a criminal case." NMSA 1978, § 31–9–1 (1993). By contrast, Section 31–20A–2.1(C) is silent on when the defense motion should be raised. Because both hearings are triggered by motion of the defendant, involve similar issues of fact, and are governed by identical burdens of persuasion, it would be incongruous to require two separate hearings—one to determine mental retardation for purposes of competency and the other for purposes of eligibility for the death penalty. Indeed, both hearings would require substantially similar presentations of evidence, typically from expert witnesses, the expense of which in terms of both time and money tends to militate against an inflexible reading of Section 31–20A–2.1(C). "Statutes should be construed in the most beneficial way of which their language is susceptible to prevent absurdity, hardships, or injustice. . . ." *Cox v. City of Albuquerque*, 53 N.M. 334, 340, 207 P.2d 1017, 1021 (1949). Accordingly, we construe Section 31–20A–2.1(C) so as to permit a pretrial hearing "[u]pon motion of the defense requesting a ruling that the penalty of death be precluded," *id.*, when the defendant makes such motion pretrial.

{12} In addition, we recognize that a capital trial consumes significantly more resources than a noncapital trial and that it would be beneficial to all parties to resolve the question whether the defendant is ineligible for the death penalty as early in the proceedings as possible. In *State v. Ogden*, 118 N.M. 234, 238, 880 P.2d 845, 849 (1994), we acknowledged that trials involving the

death penalty "are qualitatively and quantitatively distinct from other criminal proceedings." There, we based our holding—that a defendant is entitled to a pretrial determination whether there is probable cause to support an aggravating circumstance—on our conclusion that allegations of aggravating circumstances pervade every stage of a capital prosecution; that capital prosecutions involve tremendous hardships in terms of time, emotion, energy, and expense; that the State's entitlement to a death-qualified jury may give the State a strategic advantage in both the guilt-innocence and the sentencing phases of the trial; and that capital prosecutions are uniquely complex and consume significantly more judicial resources than noncapital prosecutions. *Id.* at 238–39, 880 P.2d at 849–50. Because of the extraordinary nature of capital prosecutions, every effort must be made to avoid a death-penalty trial, as early in the proceedings as possible, where capital punishment is precluded as a matter of law.

{13} This principle acquires acute significance where mental retardation is at issue. In *Atkins*, the Court stressed that defendants with mental retardation "face a special risk of wrongful execution" because they "may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes." 536 U.S. at 320–21, 122 S.Ct. 2242. The Court gave these characteristics a constitutional dimension when it stated that "their impairments can jeopardize the reliability and fairness of capital proceedings." *Id.* at 306–07, 122 S.Ct. 2242. To minimize these risks, which are inherent in the prosecution of a capital trial where the defendant has mental retardation, we conclude that a Section 31–20A–2.1(C) hearing must be held pretrial when the defendant, as in this case, has moved pretrial to preclude the death penalty on the basis of mental retardation.

### III. Mental Retardation as a Conclusive Mitigating Factor at Sentencing

{14} Thirteen years before *Atkins* was decided, the Supreme Court had considered and rejected a claim that the execution of a

criminal defendant with mental retardation violated the Eighth Amendment. *See Penry,* 492 U.S. at 340, 109 S.Ct. 2934. While *Atkins* overruled *Penry* on this point, *Atkins* did not call into question *Penry's* reaffirmation of the principle, grounded in the Eighth Amendment, that the sentencing jury in a capital trial "must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *Penry,* 492 U.S. at 328, 109 S.Ct. 2934; *accord Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ("[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer … not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.") (Burger, Ch. J., plurality) (emphasis omitted); *Eddings v. Oklahoma,* 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.") (emphasis omitted). *Penry* held that this principle applies to any mitigating evidence, including evidence of mental retardation:

[I]n the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its "reasoned moral response" to that evidence in rendering its sentencing decision.

*Penry,* 492 U.S. at 328, 109 S.Ct. 2934.

■ {15} In New Mexico, although the procedure outlined in Section 31–20A–2.1(C) calls for the trial court to decide the issue of mental retardation in the first instance, the Legislature intended for a sentencing jury also to consider the issue of "diminished intelligence" as a mitigating factor in the event the trial judge did not find mental retardation: "A ruling by the court that evidence of diminished intelligence introduced by the defendant does not preclude the death penalty … shall not restrict the defendant's opportunity to introduce such evidence at the sentencing proceeding or to argue that that evidence should be given mitigating significance." *Id.* Thus, Section 31–20A–2.1(C) comports with the *Penry* rule to the extent it provides an opportunity for the jury to consider and give mitigating effect to evidence of "diminished intelligence," one factor probative of mental retardation. *See* § 31–20A–2.1(A) (defining mental retardation as "significantly subaverage general intellectual functioning *existing concurrently with* deficits in adaptive behavior") (emphasis added).

■ {16} However, to the extent Section 31–20A–2.1(C) may be construed to restrict the jury's opportunity to consider and give mitigating effect to other evidence probative of mental retardation, such restriction would fail to comply with the rule of *Lockett, Eddings,* and *Penry.* "When construing a statute we are to construe it, if possible, so that it will be constitutional." *State v. Wade,* 100 N.M. 152, 154, 667 P.2d 459, 461 (1983); *accord Huey v. Lente,* 85 N.M. 597, 598, 514 P.2d 1093, 1094 (1973) ("[I]f a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality."). Because construing Section 31–20A–2.1(C) as restricting the defendant's right to present other evidence of mental retardation would render that restriction unconstitutional, we instead construe Section 31–20A–2.1(C) so as to permit the defendant to introduce any admissible evidence of mental retardation.

■ {17} Although we have held mental retardation is not an element of a capital offense that must be proved to a jury beyond a reasonable doubt, a determination of mental retardation by the jury at sentencing nevertheless must stand as an absolute bar to imposition of the death penalty. *See Atkins,* 536 U.S. at 321, 122 S.Ct. 2242 ("[T]he Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender.") (quoted authority omitted). After *Atkins,* therefore, the "mitigating significance," § 31–20A–2.1(C), of a jury's determination of mental retardation

must be conclusive: if the jury finds that the defendant has mental retardation, notwithstanding the trial court's previous determination, the defendant is not eligible for the death penalty. In accordance with our reading of Section 31–20A–2.1(C), the defendant is entitled to introduce evidence of mental retardation at the sentencing stage, and a finding of mental retardation at sentencing must be given conclusive mitigating effect.[2]

{18} To enable the jury during the capital sentencing phase to give conclusive mitigating effect to a finding of mental retardation, several general conditions must logically be met: (1) the defendant must have an opportunity at the sentencing proceeding both to introduce evidence of "general intellectual functioning" and "deficits in adaptive behavior," *see* § 31–20A–2.1(A) & (C), and to argue that such evidence is probative of mental retardation; (2) the jury must be instructed on the statutory definition of mental retardation, *see* § 31–20A–2.1(A); and (3) the jury must resolve the issue of mental retardation before it may proceed to its consideration of aggravating and other mitigating factors.[3]

{19} Further, because the jury's consideration of mental retardation must be considered independent of its consideration of aggravating and other mitigating factors, a special verdict is required. We note that we do not require the jury to apply a specific standard to the manner in which it balances aggravating and mitigating circumstances. *See State v. Cheadle*, 101 N.M. 282, 288, 681 P.2d 708, 714 (1983). Here, however, because a finding of mental retardation must not be weighed as a factor, but rather must be determined conclusively, the jury must be instructed to apply a specific standard of proof. In the absence of legislative guidance

on this point, and in the absence of a proper constitutional challenge to the existing statutory burden, we apply the standard of proof articulated in Section 31–20A–2.1(C). If the jury finds by a preponderance of the evidence that the defendant has mental retardation, it must sentence the defendant to life imprisonment.

{20} Finally, we address what portion of the sentencing jury must find mental retardation for such finding to be given conclusive mitigating effect. On this issue we must construe our holding in *Clark v. Tansy*, 118 N.M. 486, 494, 882 P.2d 527, 535 (1994), that the jury "need not unanimously agree on the presence of a mitigating circumstance before considering it," *see also* UJI 14–7029 NMRA 2004, together with the Capital Felony Sentencing Act, NMSA 1978, Section 31–20A–3 (1979), which requires that in order to impose a sentence of death, the sentencing jury must unanimously specify the sentence of death. Because we hold that a jury finding that the defendant has mental retardation conclusively bars the death penalty, Section 31—20A–3 controls: the sentencing jury must be unanimous in its determination that the defendant is eligible for the death penalty. Therefore, the sentencing jury must unanimously specify that it does not find mental retardation before proceeding to its consideration of aggravating and other mitigating factors. "Where ... the jury does not make the required finding, or the jury is unable to reach a unanimous verdict, the court shall sentence the defendant to life imprisonment." *Id.*

## CONCLUSION

{21} We reverse and remand to the trial court for proceedings consistent with this opinion.

### {22} IT IS SO ORDERED.

2. Because this case is before us in the course of a pretrial interlocutory appeal, the question of the precise procedure and instructions by which the jury at sentencing must consider the issue of mental retardation is not directly before us. However, New Mexico's Capital Felony Sentencing Act requires that "the sentencing proceeding shall be conducted as soon as practicable by the original trial judge before the original trial jury." NMSA 1978, § 31–20A–1(B) (1979). Thus, we address these issues now in the interest of judicial economy by resolving them, at least in a preliminary fashion, before the trial jury is im-

paneled. Because we are not in a position to predict all the possible permutations of issues that might arise at that stage, we here provide only general guidelines for the assistance of the trial court should it be required to rule on issues relating to the jury determination at sentencing.

3. Consistent with Section 31–20A–2.1(C), at no stage of the trial may the jury "be informed of any ruling" by the trial court denying the defendant's claim of mental retardation.

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and RICHARD C. BOSSON, Justices.