1997–NMSC–017

933 P.2d 851

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eric SMITH, Defendant–Appellant.**

No. 23696.

Supreme Court of New Mexico.

Feb. 7, 1997.

T. Glenn Ellington, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Kari Converse, Joseph E. Shattuck, Jeff Rein, Assistant Public Defenders, Santa Fe, for Appellant.

Ron P. Lopez, District Attorney and Madeline Melka, Deputy District Attorney, Estancia, for Appellee.

OPINION

RANSOM, Justice.

1. Eric Smith (Smith) was charged with false imprisonment of his two sons, Eric Smith Jr. and Larry Smith, *see* NMSA 1978, § 30–4–3 (Repl.Pamp.1994) (false imprisonment), and first-degree murder of Eric Jr. with the aggravating circumstance of murder of a witness, *see* NMSA 1978, § 30–2–1(A) (Repl.Pamp.1994) (first-degree murder); NMSA 1978, § 31–20A–5(G) (Repl. Pamp.1994) (aggravating circumstance for death-penalty consideration). After a pretrial hearing, the trial court denied Smith's motion to preclude the death-penalty proceedings. On interlocutory appeal, *see* Rule 12–203 NMRA 1996 (interlocutory appeal procedure); NMSA 1978, § 39–3–3(A)(3)

(Repl.Pamp.1991) (interlocutory appeal in criminal cases), we consider whether the State showed probable cause to believe the aggravating circumstance of murder of a witness was present. *See State v. Ogden*, 118 N.M. 234, 240, 880 P.2d 845, 851 (1994) (holding trial court may conduct pretrial hearing to determine probable cause to proceed with death-penalty charges).

2. We also consider whether evidence inadmissible at trial under Rule 11–403 NMRA 1997 (unfair prejudice as grounds to exclude relevant evidence) and Rule 11–404(B) NMRA 1997 (inadmissibility of evidence of other crimes) may be considered in a hearing to determine probable cause for death-penalty proceedings. We hold that evidence inadmissible under Rule 403 or 404(B) may be considered and, on the *Ogden* issue itself, we hold that the State failed to meet its probable-cause burden. We remand for dismissal of the death-penalty proceedings *without prejudice*.

3. *Facts.* Although the State proffers certain uncontroverted facts, the only evidence contained in the record is a statement given by Larry. From the facts not now controverted and Larry's statement, it is apparent that Smith and his two sons left in a van from Chandler, Arizona, to drive to New York, where Smith intended to kill his mother because he believed that the devil had entered her body. Smith had been ingesting methamphetamine, had not slept for six days, and was experiencing hallucinations. While in New Mexico, Smith decided to turn back to Arizona because he believed that his mother was no longer possessed by the devil.

4. On his way back to Arizona, Smith made his sons sit in the front seat, armed with pocket knives as protection against the devil, who Smith now believed to be in the back of the van. Later, Smith announced to his sons that he would have to kill them because the devil had entered their bodies. He stopped the van and began stabbing Eric Jr. When Larry tried to stop Smith from stabbing Eric Jr., Smith elbowed Larry and continued to stab Eric Jr. to death. Larry hid in the back of the van while, between the front seats, Smith stabbed Eric Jr. Smith beheaded Eric Jr. in the roadway in full view of several witnesses. Smith then drove away. Eric Jr.'s head was found seven-tenths of a mile from his body.

5. According to Larry's statement, Smith had been physically and verbally abusive of both Eric Jr. and Larry in the past, had possessed and used controlled substances in the past, and on two occasions had threatened Larry with death if Larry reported Smith's physical abuse or drug use. These threats occurred six years and two years prior to Eric Jr.'s death. Larry also stated that Eric Jr. was a "daddy's boy" who would never report his father's wrongdoings to the authorities.

6. *Aggravating circumstance.* To impose the death penalty, evidence must "support the finding of a statutory aggravating circumstance." NMSA 1978, § 31–20A–4(C)(1) (Repl.Pamp.1994). The Eighth Amendment requires that aggravating circumstances "genuinely narrow the class of persons eligible for the death penalty and ... reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *State v. Clark*, 108 N.M. 288, 304, 772 P.2d 322, 338 (1989) (quoting *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983)). To support a finding of the aggravating circumstance of murder of a witness, the State must show the defendant killed his or her victim for the purpose of preventing report of the crime or testimony in any criminal proceeding. *See* § 31–20A–5(G); *State v. Willis*, 123 N.M. 55, 60, 933 P.2d 854, 859 (N.M.1997). In *Clark*, we stated that "[w]hen the motive for the murder was to avoid detection and arrest, the class of murders is adequately narrowed for [E]ighth [A]mendment purposes." 108 N.M. at 304, 772 P.2d at 338.

7. Prior to trial, the trial court may hold a limited evidentiary hearing to determine whether "there is probable cause to believe an aggravating circumstance is present." *Ogden*, 118 N.M. at 240, 880 P.2d at 851. Before proceeding with death-penalty charges in this case, the State must show there is probable cause to believe that Eric Jr.'s murder "was motivated by a desire to

escape criminal prosecution for an earlier felony committed against the victim or some other person." *Clark v. Tansy*, 118 N.M. 486, 494, 882 P.2d 527, 535 (1994).

8. The State alleges Smith killed Eric Jr. to prevent him from reporting false imprisonment, past and present possession and use of a controlled substance, and driving while under the influence of a controlled substance. It contends that Smith's throwing a knife and Eric Jr.'s head from the van, attempting to ram police vehicles, avoiding a spike strip, and jumping a roadblock indicate he attempted to avoid detection of these crimes. According to the State's theory,

> [Smith] murdered [Eric Jr.] to prevent him from reporting both past and present crimes and because, if he had not, [Eric Jr.] most certainly would have reported the events of the hours and days prior to the murder, including his use of controlled substances throughout the trip, a felony, and his abuse of [Larry], as well. Once [Smith] began the process, he could not stop until [Eric Jr.] was dead and then in acknowledgement of his own wrongdoing, he fled, and disposed of or attempted to obliterate evidence.

For the following reasons, we hold there is not probable cause to believe Smith killed Eric Jr. as a witness.

9. —*False imprisonment.* To charge Smith with murdering Eric Jr. to prevent him from reporting the false imprisonment of Eric Jr. and Larry, the State must establish that Smith believed he had falsely imprisoned his sons. False imprisonment occurs when one intentionally confines or restrains another "without his consent and with knowledge that [one] has no lawful authority to do so." Section 30-4-3. There is, however, no evidence that Smith believed he committed this crime. Larry's statement indicates that Smith did not at first accede to his sons' wishes that they go back to Arizona. In doing so, Smith appears to have done nothing more than exercise his lawful authority as a parent of minor children. Therefore, the State has failed to show probable cause that Smith killed Eric Jr. in the belief he was preventing Eric Jr. from reporting the crime of false imprisonment of Eric Jr. and Larry.

10. —*Possession of controlled substance and driving under influence of controlled substance.* While throwing the knife and Eric Jr.'s head from the van might indicate an attempt to avoid detection of the murder of Eric Jr., these actions do not show that Smith murdered Eric Jr. to avoid detection of other crimes. Similarly, attempting to ram police vehicles, avoiding a spike strip, and jumping a roadblock suggest Smith attempted to avoid criminal prosecution *after* murdering Eric Jr., but they do not show he murdered Eric Jr. in order to avoid criminal prosecution.

11. This case is unlike *State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990), and *Clark*, 108 N.M. 288, 772 P.2d 322, where we found probable cause to believe the defendants killed their victims as witnesses. In *Henderson*, the lack of any other plausible motive supported the State's theory that the defendant had murdered the victim to avoid detection of his rape of her. 109 N.M. at 660, 789 P.2d at 608. In *Clark*, there was evidence that the defendant stated his belief that he could not let the victim go "because that would be the end for him." 108 N.M. at 304, 772 P.2d at 338. In this case, there is affirmative evidence that Smith's motive in killing Eric Jr. was Smith's belief that Eric Jr. was possessed by the devil, and there is no evidence that Smith stated his intention to kill Eric Jr. as a witness to other crimes.

12. Furthermore, it is implausible that Smith would realize that he was driving while under the influence of controlled substances and decide that to avoid detection he must kill his sons. Yet this is the theory offered by the State. It is less plausible than the theory suggested by Smith and corroborated in Larry's statement. On eleven separate occasions in his statement, Larry refers to Smith's hallucinations and his belief that he was killing the devil. The fact that Eric Jr. was a "daddy's boy" and would not tell the authorities about his father's wrongdoings casts further doubt on the State's theory that Smith murdered Eric Jr. to prevent him from reporting Smith's crimes. Larry's statement supports the theory that Smith suffered from a paranoid hallucination that

he was being pursued by the devil and that he killed Eric Jr. because he believed that the devil had entered Eric Jr.'s body.

13. The State suggests that Smith's theory of motivation for the killing is not credible because his belief that the devil had entered Eric Jr.'s body is not a credible belief. That Smith's beliefs concerning the devil are not credible is irrelevant because the operative question is not whether a jury could reasonably believe the devil had entered Eric Jr.'s body but whether a jury could reasonably believe Smith believed the devil had entered Eric Jr.'s body. The statement given by Larry indicates Smith believed so. While Smith's actions are shocking beyond description, the aggravating circumstance of murder of a witness is absent on the evidence in the record at this time.

14. *Consideration of evidence inadmissible at trial.* Smith argues that Larry's allegations of past threats are too remote and too prejudicial to be allowed as evidence at the sentencing phase and should therefore not be considered in an *Ogden* hearing. Although now moot for purposes of this appeal, we address this question as important for the guidance of future action in this case and others. Smith contends that a trial court's consideration of such evidence at an *Ogden* hearing would defeat the purpose of such a hearing, which is "to screen out only those cases in which the State does not have any significant factual or legal basis for pursuing the death penalty." 118 N.M. at 240, 880 P.2d at 851. Smith's contention is unpersuasive.

15. In *Ogden*, we stated that the presence or absence of an aggravating circumstance is to be determined at a "limited evidentiary hearing" which "should be summary in nature." *Id.* We noted that "[f]ormal rules of evidence should be relaxed, and hearsay will be admissible." *Id.* Furthermore, we indicated that "we have no intention of allowing a trial within a trial on a pretrial challenge to aggravating circumstances." *Id.* Evidence inadmissible under Rule 403 or Rule 404(B) is similar to inadmissible hearsay insofar as neither may be used at trial. We see no principled basis for allowing one while excluding the other. Therefore, just as a trial court may consider inadmissible hearsay in an *Ogden* hearing, so may it consider evidence inadmissible under Rule 403 or Rule 404(B).

16. *Conclusion.* The State failed to meet its probable cause burden to show the presence of the aggravating circumstance of murder of a witness. Evidence inadmissible at trial, including evidence inadmissible under Rule 403 or Rule 404(B), may be considered by the trial court at an *Ogden* hearing.

17. **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, MINZNER and SERNA, JJ., concur.