2006-NMSC-007

*130 P.3d 731*

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Manuel MARTINEZ, Defendant–
Appellant.**

**No. 28,623.**

Supreme Court of New Mexico.

Feb. 16, 2006.

154

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, New Mexico, for Appellant.

Patricia A. Madrid, Attorney General, Victoria M. Wilson, Assistant Attorney General, Santa Fe, New Mexico, for Appellee.

## OPINION

BOSSON, Chief Justice.

{1} Defendant Manuel Martinez is charged with two counts of first degree murder and one count of kidnapping, robbery and aggravated burglary. The charges arise from the killings of Ervin and Julia Tafoya in their home. The State seeks the death penalty for both killings based on the aggravating circumstance that the victims were killed to prevent them from reporting crimes they had witnessed. *See* NMSA 1978, § 31–20A–5(G) (1981). The State also seeks the death penalty for the killing of Mrs. Tafoya for the aggravating circumstance that she was intentionally killed in the commission of a kidnapping. *See* § 31–20A–5(B).

{2} Defendant moved to dismiss all of the aggravating circumstances thereby making him ineligible for the death penalty. *See State v. Ogden,* 118 N.M. 234, 239, 880 P.2d 845, 850 (1994) The district court conducted

an evidentiary hearing and determined there was sufficient evidence to establish probable cause that all the alleged aggravating circumstances were present. On interlocutory appeal, pursuant to *Ogden*, we find no probable cause to support the murder-of-a-witness aggravating factor for either killing. However, we affirm the district court's decision finding probable cause existed that Mrs. Tafoya was intentionally killed in the commission of a kidnapping.

## BACKGROUND

{3} Ervin and Julia Tafoya operated a rock and gem store attached to their residence in Hobbs, New Mexico. The couple was elderly and in poor health. Mr. Tafoya used a cane to walk, and Mrs. Tafoya was on oxygen because of health problems. Mrs. Tafoya's mobility was extremely limited and she usually stayed in her bedroom, sitting in a chair.

{4} On July 24, 2003, Mr. and Mrs. Tafoya were robbed and attacked in their home. The Tafoyas' daughter, Rosetta Bland, discovered the couple when she came to check on them that evening. When she entered their home, Ms. Bland noticed certain things out of place. The back door was closed and one of her father's shirts was covering the window of the door. Usually, this window was never covered. Once inside, Ms. Bland noticed there were items from a chest of drawers scattered all over the floor. Mrs. Tafoya, who was still conscious, said they were robbed and instructed her daughter to check on her father in the other room because she had heard him fall. Ms. Bland went into the kitchen and found her father dead on the kitchen floor near the entrance way to the gem store. Ms. Bland returned to her mother and turned on the lights to find her covered in blood and bound to her chair by her husband's suspenders with her hands tied behind her back.

{5} Mrs. Tafoya had stab wounds to her neck and chest as well as defensive wounds to her arms and hands. She died two days later of her injuries. Mr. Tafoya had multiple stab wounds throughout his body.

{6} Subsequently, the police conducted several interviews with Defendant. Defendant changed his story many times, first denying involvement, then claiming he was only the lookout. He finally admitted to being present in the house when the murders occurred and to stealing a gun and some jewelry, but he maintained that another man actually did the killings. Defendant stated he went to the Tafoya home with the intention of stealing rocks and gems to buy drugs, but, in his words, the robbery had "gone bad."

{7} Defendant moved to dismiss all the aggravating circumstances, but after an evidentiary hearing the district court ruled there was probable cause to proceed with the death penalty. On interlocutory appeal, the State argues the district court correctly found probable cause to go forward on the murder-of-a-witness aggravating factor with respect to both killings. The State's overarching theory is that both victims were killed to prevent them from reporting the burglary and robbery of their home and gem store. The State points to the Tafoyas' elderly age and disabilities, reasoning that Defendant did not need to kill them to succeed in the robbery, and therefore, the motive must have been to silence them as witnesses. The State also relies on evidence that Defendant attempted to conceal his involvement in both crimes, thereby giving rise to an inference that Defendant's motive for murder was to conceal his identity.

{8} The State further argues for a second aggravating factor with respect to the murder of Mrs. Tafoya; that Defendant had the intent to kill her during the commission of a kidnapping. Defendant challenges the trial court's finding of probable cause regarding both the aggravating factors. We now review both determinations.

## DISCUSSION

### Standard of Review

■ {9} In *Ogden*, we held that a pretrial ruling is appropriate to assess aggravating death penalty factors, and thereby prevent unwarranted death penalty prosecutions and needless waste of time, expense and judicial resources. 118 N.M. at 238–39, 880 P.2d at 849–50. "Pretrial review of aggravating circumstances is intended to screen out only those cases in which the State does not have

any significant factual or legal basis for pursuing the death penalty. . . ." *Id.* at 240, 880 P.2d at 851. Accordingly, we apply a probable cause standard of review. *Id.*

▮ {10} The standard of review for rulings on probable cause will be affected depending on whether the question is one of fact, law or mixed fact and law. *Id.* at 239, 880 P.2d at 850. When the district court is presented with a question of fact or a mixed question of fact and law, as in this case, it should dismiss when there is no probable cause to believe the aggravating circumstance is present. *Id.* The State bears the burden of persuasion to establish probable cause. *Id.* at 240, 880 P.2d at 851. The district court does not weigh the evidence and, on appeal, we review questions of fact to "see whether the district court correctly evaluated probable cause to support the aggravating circumstance." *Id.; accord State v. Coffin,* 1999–NMSC–038, ¶ 48, 128 N.M. 192, 991 P.2d 477. Probable cause exists when there is " 'that degree of evidence to bring within reasonable probabilities the fact that [an aggravating circumstance] was committed by the accused.' " *State v. Young,* 2004–NMSC–015, ¶ 2, 135 N.M. 458, 90 P.3d 477 (quoting *State v. Garcia,* 79 N.M. 367, 368–69, 443 P.2d 860, 861–62 (1968)).

### Aggravating Circumstances

▮ {11} To avoid the arbitrary imposition of capital punishment, the State must insure that aggravating factors "justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *see also McCleskey v. Kemp,* 481 U.S. 279, 305, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Gregg v. Georgia,* 428 U.S. 153, 197, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). To justify the death penalty, the United States Supreme Court has mandated that states create a sentencing scheme that insures the punishment of death is only applied to "materially more 'depraved' " murderers, a narrowly tailored class of the worst offenders. *Godfrey v. Georgia,* 446 U.S. 420, 433, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *see also State v. Clark,* 108 N.M. 288, 304, 772 P.2d 322, 338

(1989), *overruled on other grounds by State v. Henderson,* 109 N.M. 655, 789 P.2d 603 (1990) (citing *Godfrey* ). To this end, the Capital Felony Sentencing Act enumerates seven aggravating circumstances that make a first degree murder eligible for the death penalty. The two at issue here are murder of a witness, and murder, with intent to kill, during the commission of a kidnapping. *See* § 31–20A–5(B), (G).

### Murder of a Witness

▮ {12} A first degree murder becomes death eligible if the murder is of a "witness to a crime or any person likely to become a witness to a crime, for the purpose of preventing report of the crime or testimony in any criminal proceeding." Section 31–20A–5(G); *see also* UJI 14–7023. To establish this aggravating factor at trial, the State must prove beyond a reasonable doubt that (1) the victim was a witness to a crime or was likely to become a witness to a crime, and (2) the defendant murdered the victim with the motive to prevent the victim from reporting the crime or testifying in a criminal proceeding. UJI 14–7023. The crime witnessed must be separate from the murder. *Id.* The key is the defendant's motive or reason for killing the victim. *Clark,* 108 N.M. at 304, 772 P.2d at 338. At the pretrial *Ogden* stage, the issue is whether the State can show "*probable cause* to believe a jury could reasonably find that [the defendant] killed the victim as a witness." *State v. Willis,* 1997–NMSC–014, ¶ 18, 123 N.M. 55, 933 P.2d 854.

▮ {13} When ruling on the existence of probable cause that murder was committed for the purpose of silencing a witness, we bear in mind the legislative policy in enumerating a limited number of narrowly tailored aggravating circumstances. In creating these limited circumstances in Section 31–20A–5(B), our Legislature determined that murderers who kill witnesses to prevent them from testifying or reporting a separate crime, represent a narrowly tailored class. Narrowing the class of murders to which the death penalty applies, in part to those murders committed to avoid detection and arrest, withstands Eighth Amendment scrutiny and

is therefore a constitutional application of the death penalty. *Clark*, 108 N.M. at 304, 772 P.2d at 338.

{14} In so narrowing this class of murderers, the Legislature, lest it run afoul of the Eighth Amendment, did not intend to cast a net wide enough to include every murder, or even every murder in which another crime occurs and the defendant later attempts to conceal involvement or avoid apprehension. *See State v. Cleve*, 1999–NMSC–017, ¶ 14, 127 N.M. 240, 980 P.2d 23 (stating that when enacting a statute, the Legislature is presumed to know the law). By definition, every murder involves a victim who is a potential witness. *People v. Davis*, 794 P.2d 159, 187 (Col.1990). Moreover, in almost every murder, the killer makes some attempt to tamper with evidence and conceal his guilt. Constitutional narrowing requires more.

{15} In this context, what distinguishes murders deserving of the death penalty is concrete evidence indicative of the murderer's intent at the time of the killing, something more than mere incidental efforts to avoid detection after the killing has already taken place. To satisfy Eighth Amendment scrutiny, our statute narrows the class of offenders to those whose specific intent or motivation for the killing is to silence a potential witness and prevent report of a crime. *Id.* (noting that focus on the purpose of the murder narrows the class of murders for which the aggravating circumstance applies); *Clark*, 108 N.M. at 304, 772 P.2d at 338; *see also State v. Flores*, 2004–NMSC–021, ¶ 16, 135 N.M. 759, 93 P.3d 1264 (stating the court construes a statute, if possible, so that it will be constitutional). Because the specific intent requirement is directed toward attendant circumstances of the crime, a defendant acts "purposely" when "he is aware of the existence of such circumstances or he believes or hopes that they exist." 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 5.2 (2d ed.2003).

{16} To support the aggravating factor of silencing a witness to prevent the report of another crime, we have previously relied on such evidence as the defendant's own incriminating statements about killing to prevent testimony, prior crimes that are probative of the defendant's motive, and the lack of other plausible motives for the killing. *State v. Allen*, 2000–NMSC–002, ¶ 79, 128 N.M. 482, 994 P.2d 728 (citing cases). Circumstantial evidence of intent surrounding the crimes may also be considered. *See State v. Frank*, 92 N.M. 456, 458, 589 P.2d 1047, 1049 (1979) ("Intent is subjective and is almost always inferred from other facts in the case."); UJI 14–141, –201 (intent may be inferred from surrounding circumstances). The crime the victim witnessed must be separate from the murder; it must be a second, underlying crime serious enough that the defendant kills specifically to silence the victim and prevent the victim's report or testimony against him. *Cf.* UJI 14–7023 (requiring the crime the victim witnessed be a separate crime from the murder); *State v. Treadway*, ── – NMSC – ──, No. 26,218, slip op. at 5 (May 6, 2002); [1] *State v. Smith*, 1997–NMSC–017, ¶ 10, 123 N.M. 52, 933 P.2d 851.

{17} Our cases concerning the evidence necessary to support the murder-of-a-witness aggravator represent a broad spectrum.[2] We analyze those cases as a guide to help determine where on this spectrum the two Tafoya murders fit.

{18} On one end are those cases involving direct evidence of a killer's motive. Evidence of this type commonly involves incriminating statements by the killer that the victim was silenced to prevent report of an underlying crime. *See Allen*, 2000–NMSC–002, ¶ 80, 128 N.M. 482, 994 P.2d 728 (stating defendant told wife he killed his rape victim

---

1. The unpublished Decision in *Treadway*, attached as an appendix to this opinion, will be reported and may be cited in the future as any other published opinion. We do so because it adds significant value to our case law on the issues raised in this case.

2. Our precedent has not yet included the classic case where a trial is pending and a witness is killed prior to giving all of the witness's testimony or a witness is killed in retaliation for testifying. *See* § 31–20A–5(G). Our cases are limited to the more frequent circumstance in which the victim is a potential witness to a crime preceding or coinciding with the murder. *Id.*

to prevent her from reporting the rape); *Coffin*, 1999–NMSC–038, ¶ 49, 128 N.M. 192, 991 P.2d 477 (stating defendant told witness he killed the victim because the victim witnessed him killing another man); *Clark*, 108 N.M. at 304, 772 P.2d at 338 (stating defendant believed he could not let his rape victim go "because that would be the end for him"); *cf. Smith*, 1997–NMSC–017, ¶ 11, 123 N.M. 52, 933 P.2d 851 (indicating the defendant's motive to kill was the belief the victim was possessed by the devil and none of his statements indicated an intent to kill victim as a potential witness).

 {19} Although not as compelling as incriminating statements, a defendant's prior crimes may be strong circumstantial evidence of a motive to silence. *See Allen*, 2000–NMSC–002, ¶ 80, 128 N.M. 482, 994 P.2d 728; *Clark*, 108 N.M. at 304, 772 P.2d at 338. In *Allen*, the defendant had a prior conviction in which he threatened to kill one of the witnesses if she testified. 2000–NMSC–002, ¶ 80, 128 N.M. 482, 994 P.2d 728. In *Clark*, the defendant had a prior conviction for kidnapping and rape in which the victim had supplied critical evidence against him. 108 N.M. at 304, 772 P.2d at 338. Notably, these strong indicators of a witness-oriented motive, incriminating statements and prior convictions, are absent from this case.

{20} At the other end of the spectrum are those cases in which the evidence is insufficient to satisfy the specific intent requirement of the statute. For example, in *Treadway*,[3] we held the evidence was insufficient to support the specific purpose of killing to prevent report of a crime. No. 26,218, slip op. at 6. The defendant in that case shot a store clerk during a robbery as the clerk picked up a cue stick and the telephone. *Id.* This Court acknowledged the clerk's act of picking up the telephone supported an inference that the clerk may have intended to call the police. *Id.* at 5. Nonetheless, we noted the short period of time, only a few seconds, between when the clerk grabbed the phone and the defendant shot him, and the "paucity

of additional evidence" of defendant's motive for the killing. *Id.* at 6. Despite evidence that the defendant subsequently took steps to conceal his identity and cover up his crimes, we concluded in *Treadway* that the evidence was insufficient to determine whether the clerk was killed to silence him. *Id.*

{21} Somewhere in between these two polar opposites, *Allen* and *Clark* at one end and *Treadway* at the other, are those cases in which there is no direct evidence of the defendant's motive, but there is enough circumstantial evidence to allow the jury to decide if the aggravating factor is present. A prime example comes from the *Willis* case. In *Willis*, 1997–NMSC–014, ¶ 3, 123 N.M. 55, 933 P.2d 854, neighbors called police reporting yelling, scuffling, and a female crying from inside the victim's apartment. The police arrived two minutes later, but by then the house was quiet. *Id.* The victim was found dead in her apartment. *Id.* A neighbor told police he saw a man matching Willis's physical characteristics running from the alley behind the house. *Id.* The evidence indicated that Willis had gone to the victim's house to steal her supply of drugs and money, but not to kill her. *Id.* ¶ 7. There was also evidence that Willis was attempting to rob the victim, that she struggled with him and screamed loud enough to alert the neighbors, thereby leaving Willis only a short time in which to commit the murder before the police arrived. *Id.* The evidence suggested that Willis killed the victim to silence her as she attempted to report the crime by screaming. We found probable cause to proceed on the murder-of-a-witness aggravator. *Id.* ¶ 16.

{22} While *Willis* was a close case, the circumstantial evidence that the victim was killed to silence her—she was a robbery victim, she screamed loud enough to alert the neighbors, and she was silent upon the quick arrival of the police—had a direct link to the requisite motive. Such a link was enough to establish probable cause that the case fit within the narrow circumstance in which our legislature has found the death penalty permissible.[4]

---

3. *See supra* note 1.

4. In *Willis,* we observed with some hesitation that whether the motive could be proven to a

{23} Another example of a case without direct evidence is our opinion in *Henderson,* 109 N.M. 655, 789 P.2d 603, *overruled on other grounds by Clark v. Tansy,* 118 N.M. 486, 882 P.2d 527 (1994), which represents the closest case to date. In that case, the defendant went to the victim's house apparently to engage in sexual intercourse. *Id.* at 657, 789 P.2d at 605. Although he first denied it, Henderson ultimately admitted he raped the victim. *Id.* There was evidence of a struggle with the victim while Henderson severely beat and strangled her. *Id.* He attempted to wipe his fingerprints from the scene following the killing. *Id.* The next day, he went back to the victim's house, broke in, again tried to wipe fingerprints from the scene, and then turned on gas jets in an attempt to destroy the entire crime scene. *Id.*

{24} On appeal, this Court unanimously concluded there was sufficient evidence of another aggravator, that the victim was intentionally killed in the commission of criminal sexual penetration.[5] However, in a sharply divided opinion, in which the majority changed from its original decision upon rehearing,[6] three justices held there was sufficient evidence that the victim was killed to silence her as a witness. *Id.* at 660, 789 P.2d at 608. The majority concluded there were only two plausible motives for the killing, to silence a witness or to overcome the resistance of the rape victim. *Id.* A combination of the lack of any other plausible motive, the defendant's extreme and repeated attempts to destroy evidence, and some, undefined "other evidence in the record" led the majority to conclude the evidence was sufficient. *Id.*

{25} The State relies heavily upon *Henderson* in applying the murder-of-a-witness aggravating factor to both killings. It argues that probable cause is met because there are no other plausible motives for the killings, and Defendant attempted to destroy evidence and conceal his involvement in the crimes. We agree that *Henderson* is the closest case favoring affirmance on this issue. Although a second plausible motive existed for that killing—to overcome resistance to rape—the *Henderson* Court seemed to conclude that it was sufficient to prove: (a) the murder-of-a-witness motive was equally plausible, (b) other than those two, there were no other plausible motives, and (c) there were attempts to destroy evidence. The State asks us to construe *Henderson* to hold that this evidence would permit a jury to conclude the Tafoyas were murdered to prevent them from being witnesses. As noted above, however, in *Henderson,* this Court referred to "other evidence in the record" in concluding there was sufficient evidence to support the aggravating circumstance. *See Henderson,* 109 N.M. at 660, 789 P.2d at 608.

{26} The State appears to cite to *Henderson* for a universal proposition that the murder-of-a-witness aggravator fits whenever there is no other plausible motive for the killing and there is evidence of concealment after the crime. This interpretation of *Henderson* arguably finds some support in our own precedent. *See Allen,* 2000-NMSC-002, ¶ 79, 128 N.M. 482, 994 P.2d 728 (quoting *Henderson* as holding the aggravator was supported by "the lack of any other plausible motive, together with the acts of the defendant in attempting to avoid detection by destroying evidence at the scene that would tie him [or her] to the crime"); *Smith,*

jury beyond a reasonable doubt "is another question entirely." 1997–NMSC–014, ¶ 16, 123 N.M. 55, 933 P.2d 854. The difference between the evidence necessary to satisfy probable cause and that needed to meet proof beyond a reasonable doubt in this type of case is perhaps best illustrated by comparing *Willis* to *Treadway.* The same type of "direct link" circumstantial evidence was present in *Treadway,* in that of the clerk picking up the phone. Nevertheless, due to the lack of other evidence of the requisite motive we held the evidence was insufficient. *Treadway,* No. 26,218, slip op. at 6.

5. *See* § 31–20A–5(B) (making death eligible a murder "committed with intent to kill in the commission of or attempt to commit ... criminal sexual penetration").

6. Initially, a majority of Chief Justice Sosa and Justices Ransom and Montgomery ruled there was insufficient evidence that the victim was killed to silence her as a witness. *See Henderson,* 109 N.M. at 666–67, 789 P.2d at 614–15 (Montgomery, J., concurring in part and dissenting in part).

1997–NMSC–017, ¶ 11, 123 N.M. 52, 933 P.2d 851 ("In *Henderson,* the lack of any other plausible motive supported the State's theory that the defendant had murdered the victim to avoid detection of his rape of her."). In *Allen,* there was evidence the defendant attempted to avoid detection by disposing of the body in a remote location and cleaning the pick-up he used to abduct her. 2000–NMSC–002, ¶ 80, 128 N.M. 482, 994 P.2d 728. Further, the State argued that because the defendant did not know the victim, the jury should infer that "there was no other plausible motive for the killing." [7] *Id.* More accurately, it seems that these cases stand for the proposition that the evidence in *Henderson* only *supported* the murder-of-a-witness aggravator. Nonetheless, because it is unclear what evidence the *Henderson* majority was referring to when it said "other evidence in the record," we believe *Henderson* can be understood, at least arguably so, to mean that lack of other plausible motives and post-crime destruction of evidence is *sufficient* to satisfy the aggravator.

{27} We find this construction of *Henderson* deeply disturbing. As we have previously discussed, proof of the aggravator requires evidence that the murder of a witness is specifically "for the purpose of preventing report of the crime." Section 31–20A–5(G). When this evidence is purely circumstantial, it must have a direct link to the motive, such as in *Willis.* By contrast, proof of a negative—the lack of any other plausible motive—is not the equivalent of affirmative proof of a specific motive. The State does not meet its burden of proving an essential element of death eligibility merely by showing the lack of alternatives. The language and intent of the statute, and the constitutional requirement of narrowing require more. Moreover, the commonplace event that a murderer tries to destroy incriminating evidence does not elevate the lack of other plausible motives to proof of a specific motive to silence a witness.

7. We note, however, that there was substantial other, direct evidence of motive in *Allen,* including the defendant's statement that he killed the victim so she would not report the rape. 2000–NMSC–002, ¶ 80, 128 N.M. 482, 994 P.2d 728.

{28} We are always reluctant to overturn precedent. *See Herrera v. Quality Pontiac,* 2003–NMSC–018, ¶ 15, 134 N.M. 43, 73 P.3d 181 (noting that *stare decisis* promotes: "1) stability of the law; 2) fairness in assuring that like cases are treated similarly; and 3) judicial economy"). Before doing so, we will look to a number of factors:

1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule "no more than a remnant of abandoned doctrine;" and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have "robbed the old rule" of justification.

*Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (quoting *Planned Parenthood v. Casey,* 505 U.S. 833, 855, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)); *accord Herrera,* 2003–NMSC–018, ¶ 15, 134 N.M. 43, 73 P.3d 181.

{29} In this case, only the first factor comes into play. We find the potential interpretation of *Henderson*—that the murder-of-a-witness motive is established when there is no other plausible motive and the defendant takes steps to destroy evidence or conceal involvement in the crime—to be unworkable. Read this way, it would open up a majority of murder cases to death eligibility. Many murders involve at least one other crime, and many murderers take some post-crime action to avoid detection. Yet, many murders will not involve a clear-cut motive, and in such cases should not become death eligible, essentially by default, simply because no other plausible motive appears more likely. Consistent with the Constitution and our legislative mandate, death penalty eligibility requires more in the way of compelling evidence that, as a matter of probabilities, the killing was specifically for the purpose of silencing a witness.

There was also the defendant's prior conviction resulting from a witness reporting the crime, even though the defendant threatened to kill her if she did. *Id.*

{30} Because *Henderson* is subject to an interpretation that appears to relax the constitutional and statutory standard in an impermissible manner, we find it "so unworkable as to be intolerable." *Trujillo,* 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305. To the extent *Henderson,* 109 N.M. at 659-60, 789 P.2d at 607-08, can be read as upholding the murder-of-a-witness motive, when the only evidence of motive is the lack of other plausible motives and attempts to destroy evidence or conceal involvement in the crimes, then to that extent, *Henderson* must be overturned, and we do so in this opinion.

{31} Having excised the foregoing proposition from *Henderson* from our murder-of-a-witness jurisprudence, we return to our spectrum of cases to determine the outcome of the present case. Within this spectrum, the cases are distinguished by the quantum and quality of evidence presented by the State that is relevant to the aggravating factor. In all the above cases, there is a murder, a separate crime that precedes or coincides with the murder, and attempts to cover-up the crimes by tampering with evidence or lying to police. But that alone is not enough. What makes the evidence enough for probable cause is something more; there must be some additional evidence of motive to bring within *"reasonable probabilities"* that the killing was "for the purpose of preventing report of the crime" by a witness, and not for some other motive, immaterial to death penalty considerations. *Young,* 2004-NMSC-015, ¶ 2, 135 N.M. 458, 90 P.3d 477 (emphasis added); *see* § 31-20A-5(G).

{32} At the easier end of the analysis is the *Clark/Allen* line of cases in which the additional evidence of motive comes directly from the defendant's own statements or there is other direct evidence such as a prior crime. At the more difficult end is a case like *Willis* where we are left to infer the defendant's motive from minimal circumstantial evidence. The key is to determine from the record whether there is a direct link from the circumstantial evidence that makes it reasonably probable, not just possible, that the defendant's motive was to silence a witness. With these considerations in mind, we turn to the two victims in this case to determine if probable cause exists that either was murdered to prevent the report of another crime.

{33} The State presented sufficient evidence of a robbery or burglary taking place at the Tafoya residence. From this, there is probable cause to believe that Mr. and Mrs. Tafoya were witnesses or likely to become witnesses to the robbery and burglary. Thus, the first element was satisfied. It is the second element, evidence of Defendant's specific intent to silence a witness, that is more problematic.

{34} For this element, we look to the record for evidence that Defendant's intent or motivation behind the killings was to silence the victims. *See* UJI 14-7023; *Willis,* 1997-NMSC-014, ¶ 18, 123 N.M. 55, 933 P.2d 854; *Clark,* 108 N.M. at 304, 772 P.2d at 338. The evidence suggests the house and store were robbed. Gems and a gun missing from the house were later connected to Defendant, the house was in disarray, and Defendant admitted he went to the house to steal and called it a robbery "gone bad." There was evidence Defendant may have attempted to conceal his involvement in the robbery by placing a shirt in the back door of the house so that no one could look in, by hiding the gems and gun, and by misleading police about his involvement in the crimes.

{35} The record is devoid of circumstantial evidence with a direct link to the requisite motive. We are left with nothing but speculation as to Defendant's motive. *Cf. State v. Flores,* 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038 (probable cause cannot be based on speculation). It is not unusual for a criminal to take steps to avoid detection while committing a crime, like posting a lookout during a drug deal or wearing a ski mask during a bank robbery. Defendant's placement of a shirt over the window in the door here is no different than this common behavior. Similarly, Defendant's later efforts to hide the gems and the gun he took from the shop, and then lie to police about his role in the killings are symptomatic of nearly every crime. If this were enough to satisfy probable cause, the murder-of-a-witness aggrava-

ting factor would be broadened far beyond the narrow class of offenders the Legislature intended for the ultimate sanction.

{36} Defendant did tell police he went to the Tafoya house to steal gems so he could use them to buy drugs, and he characterized his crime as a robbery gone bad. This is not a statement that indicates an intent to silence a witness. *Cf. Smith*, 1997–NMSC–017, ¶ 11, 123 N.M. 52, 933 P.2d 851 (holding murder-of-a-witness aggravator not established when the defendant indicated a different motive). Notably, it is also not the kind of statement this Court has found persuasive in the past with regard to the killing-of-a-witness aggravator. *Cf. Allen*, 2000–NMSC–002, ¶ 80, 128 N.M. 482, 994 P.2d 728; *Coffin*, 1999–NMSC–038, ¶ 49, 128 N.M. 192, 991 P.2d 477; *Clark*, 108 N.M. at 304, 772 P.2d at 338.

{37} The circumstantial evidence surrounding each individual killing does not shed any more light on Defendant's motive. Beginning with Mr. Tafoya, the record indicates he was found face down in the kitchen near the entry way to the store with multiple stab wounds. There is no other evidence concerning the circumstances of his death. This makes Defendant's motive even less clear.

{38} Mr. Tafoya's murder best resembles the killing in *Treadway*. It appears Mr. Tafoya was killed very quickly after confronting Defendant, leaving Defendant little time to form the specific intent to kill for the purpose of silencing a witness. *See Treadway*, No. 26,218, slip op. at 6. We note the same "paucity of additional evidence" that made the evidence of motive insufficient in *Treadway*, where at least there was some circumstantial evidence (reaching for the phone) with a direct link to the requisite motive. *Id.; see supra* note 4. And unlike *Willis*, there is no evidence the victim screamed and alerted the neighbors, causing the robber to kill the potential witness and then flee for fear of imminent capture. In short, we are struck by the absence of circumstantial evidence that might enlighten us, or a jury, as to why Mr. Tafoya was killed.

{39} Similarly, the circumstances of Mrs. Tafoya's killing have no direct link to the murder-of-a-witness motive. We note there are differences between the two killings. Most notably, Mrs. Tafoya not only witnessed the robbery, but may have also witnessed her husband's murder, when she heard him fall. Thus, it is reasonable to infer that Mr. Tafoya was killed first, before Defendant discovered Mrs. Tafoya in the home. It is possible, therefore, that Defendant felt compelled to kill Mrs. Tafoya because she was a potential witness to her husband's murder in addition to the robbery/burglary. *Cf. Henderson*, 109 N.M. at 660, 789 P.2d at 608 (noting in *State v. Guzman*, 100 N.M. 756, 676 P.2d 1321 (1984), that having two potential witnesses increases the chance someone would report the accused and make the motive more likely to silence a witness). There is, however, no concrete evidence that Defendant actually considered this reason for the killings. Without other evidence, we are left with nothing more than a guess.

{40} Additionally, Mrs. Tafoya was elderly and disabled, and her hands were bound behind her back, which makes it possible that the only reason she was tied down was to prevent her from reporting the crime and ultimately to silence her as a witness. But, none of this evidence establishes anything more than a possibility that Mrs. Tafoya may, or may not, have been killed because she was a potential witness against Defendant. Contrary to the State's assertions, the evidence she was elderly and incapacitated, does not add to the probable cause calculation. Essentially, the probative nature of this evidence derives from the question it begs, "What other reason could Defendant have had to kill her?" Although it is true that her disabled state may eliminate the possibility she was killed for trying to resist, or for other motives, this only proves a negative. The lack of other plausible motives, as we have said earlier in the opinion with regard to *Henderson*, does not prove the opposite, the motive for the killing. The murder-of-a-witness aggravator cannot be established by default.

{41} Due to the lack of evidence on motive, we cannot leave the jury to speculate about a fundamental element of death eligibility. The State has not produced a record that

narrows the motive as a matter of "reasonable probabilities" to this aggravating factor. Accordingly, we hold that the murder-of-a-witness aggravating circumstance for the killings of both Mr. and Mrs. Tafoya should have been dismissed by the court at the conclusion of the *Ogden* hearing.

**Murder in the Commission of Kidnapping**

 {42} A first degree murder becomes death eligible if it "was committed with intent to kill in the commission of or attempt to commit kidnaping."[sic] Section 31–20A–5(B). The elements of murder in the commission of a kidnapping are: (1) the crime of kidnapping or attempted kidnapping was committed; (2) the victim was murdered in the commission of the kidnapping; and (3) the defendant had the intent to kill. UJI 14–7015; *Allen*, 2000–NMSC–002, ¶ 72, 128 N.M. 482, 994 P.2d 728. This does not require the defendant to have the specific intent to kidnap and then murder the victim, but rather only the intent to kill during a kidnapping. *See* § 31–20A–5(B); *Allen*, 2000–NMSC–002, ¶ 74, 128 N.M. 482, 994 P.2d 728. As with the murder-of-a-witness aggravating factor, we review the evidence of murder in the commission of a kidnapping under the probable cause standard. We find there is probable cause to believe all three elements are present.[8]

 {43} The first element satisfies probable cause because Mrs. Tafoya was found with her hands bound behind her back and she had severe injuries from which she ultimately died. *See* NMSA 1978, § 30–4–1(A)(4) (1995) ("Kidnapping is the unlawful ... restraining ... or confining of a person, by force ... with intent ... to inflict death [or] physical injury....").

{44} In regard to the second element, Defendant argues probable cause cannot be met because the State cannot show the killing was committed in the commission of the kidnapping. He argues the defensive wounds on Mrs. Tafoya's hands indicate she sustained all her injuries prior to being restrained. Since there was no evidence of the timing of her other wounds, Defendant con-

cludes, she may have received the mortal blows before the kidnapping and not in the commission of the kidnapping. We are not persuaded.

{45} Mrs. Tafoya was alive when she was found, leaving open the possibility she suffered some of her more serious wounds after being restrained. Even Defendant admits it is a "reasonable interpretation" to conclude some of Mrs. Tafoya's injuries were inflicted after she was kidnapped. Furthermore, it seems improbable that Defendant would administer all of the mortal blows to Mrs. Tafoya and only tie her up afterwards.

{46} The third element is also satisfied as there is probable cause that Defendant had the intent to kill when he murdered Mrs. Tafoya. Defendant's motive and the manner in which Mrs. Tafoya was killed suggests an intentional killing. *See State v. Rojo*, 1999–NMSC–001, ¶ 34, 126 N.M. 438, 971 P.2d 829 (stating motive and manner of killing supports deliberate intention to take life); *State v. Griffin*, 116 N.M. 689, 695, 866 P.2d 1156, 1162 (1993) (holding close range shooting involving multiple gun shots supports intent to kill). Mrs. Tafoya was stabbed multiple times to the neck and chest. She was beaten so severely her eye came out of place. She had defensive wounds on her hands. When found, she told her daughter that the perpetrator beat her, she begged him to stop, but he just laughed at her. There is probable cause to believe Defendant had the intent to kill.

{47} We acknowledge Defendant's argument that the force used to commit the murder must be "separate and distinct" from the force used to commit the kidnapping; it cannot be one unitary act. *See Henderson*, 109 N.M. at 661, 789 P.2d at 609. In the case at hand, there is ample evidence of a separate and distinct kidnapping occurring prior to the murder. *See Allen*, 2000–NMSC–002, ¶¶ 67–69, 128 N.M. 482, 994 P.2d 728 (finding murder and kidnapping were distinct where all of the elements of kidnapping were met prior to strangulation); *State v. Jacobs*, 2000–NMSC–026, ¶ 57, 129 N.M. 448, 10 P.3d 127; *cf. State v. Foster*, 1999–NMSC–007, ¶ 30, 126 N.M. 646, 974 P.2d 140 (kidnapping

8. The State did not allege murder in the commis- sion of a kidnapping for the killing of Mr. Tafoya.

and murder are not unitary conduct when the force used to complete kidnapping is different from the force used to kill the victim). Here, the force used to commit the kidnapping was tying up the victim. The force used to kill her was stabbing her in the chest. Accordingly, this conduct is not unitary and *Henderson* is inapposite.

## CONCLUSION

{48} For the killings of both Mr. and Mrs. Tafoya, we reverse the finding of probable cause with respect to the murder-of-a-witness aggravating circumstance. With respect to the murder of Mrs. Tafoya, we affirm the finding of probable cause that she was killed in the commission of a kidnapping, making that crime death eligible. We remand for further proceedings in both prosecutions not inconsistent with this opinion.

{49} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.

## APPENDIX

STATE of New Mexico, Plaintiff–Appellee,

v.

Michael TREADWAY, Defendant–Appellant.

No. 26,218.

May 6, 2002.

Appeal from the District Court of Curry County, David W. Bonem, District Judge.

Phyllis H. Subin, Chief Public Defender, Jeffrey J. Buckels, Assistant Public Defender, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, NM, for Appellee.

## DECISION

MAES, Justice.

{1} Defendant, Michael Treadway, was convicted of felony murder after shooting and killing Red Prather, a store owner in Texico, during a robbery. Because Defendant was sentenced to death, we have jurisdiction over his appeal pursuant to Article VI, Section 2 of the New Mexico Constitution. Defendant presents numerous arguments to this Court as to why his death sentence should be vacated. These include: that there was insufficient evidence to prove the murder of a witness aggravating circumstance according to which he was sentenced; that this case is indistinguishable from any killing in the course of an armed robbery and therefore that to permit the death penalty to stand would constitute judicial creation of an "armed robbery aggravator" and would violate separation of powers; that premeditation generally was eliminated from the case when the charge of premeditated murder was dismissed and so there can be no sufficient intent to support the murder of a witness aggravator; that the death penalty is applied to Defendant disproportionately; that the prosecutor engaged in prejudicial misconduct; that evidentiary rulings during the penalty phase of the case limited the defense case and resulted in jury passion and prejudice; that the trial court improperly permitted the prosecution to rebut its own evidentiary presentation; that there was instructional error; that the Capital Felony Sentencing Act, NMSA 1978, §§ 31–20A–1 to 6 (1979, as amended through 1991), is unconstitutional in six separate respects; and that there was cumulative error.

{2} Defendant's principal argument is that there was insufficient evidence to prove the aggravating circumstance of murder of a witness beyond a reasonable doubt. We agree. We begin our analysis by noting that the murder of a witness aggravator requires the killing of a witness to a crime with specific intent, that is "for the purpose of preventing report of the crime or testimony in any criminal proceeding." *See* NMSA 1978, § 31–20A–5(G) (1981); *see also State v. Henderson*, 109 N.M. 655, 665, 789 P.2d 603, 613 (1990) (Ransom, J., concurring in part and dissenting in part) (finding, under statute, that a specific criminal intent is required), *overruled on other grounds by Clark v. Tansy*, 118 N.M. 486, 493, 882 P.2d 527, 534 (1994). Therefore, the issue is whether there was sufficient evidence that Defendant

killed Red Prather to prevent him from reporting the robbery then in progress or to prevent him from testifying to the facts thereof. We hold that as a matter of law, there was insufficient evidence to prove the murder of a witness aggravating circumstance.

*FACTS*

{3} On December 11, 1997, Defendant and two others decided to rob a store called the Play–A–Rama. They had been using cocaine, marijuana, and alcohol. The three of them first drove around the area to plan their crime and discuss the robbery. They returned to the store a short time later. Defendant, who had made himself a mask and armed himself with a loaded revolver, told the others to drop him off, drive around for a few minutes, and come back and pick him up. There was no discussion among the three of actually carrying out a shooting.

{4} Defendant was dropped off and walked into the store wearing the mask so as not to be recognized. The store was empty. Prather was in the back. He came into the store area and found Defendant near the counter. Defendant pointed the gun in the direction of Prather and demanded his wallet. Prather said he did not have any money. In his confession, Defendant stated that Prather came toward Defendant as if he were going to "get" him. Prather grabbed hold of a sawed-off pool cue with a nail in the end as well as the telephone.

{5} The prosecution argued from circumstantial evidence that Prather did not come toward Defendant in a threatening manner; rather Defendant shot Prather because he had grabbed the phone. The prosecution argued alternatively, however, that Defendant may have shot because Prather refused to hand over his wallet. Police found the pool cue on the counter and the telephone on the floor around Prather's feet. Defendant shot Prather three times, took the wallet, and fled.

{6} His accomplices picked up Defendant after he left the Play–A–Rama. They went to Defendant's girlfriend's house. Defendant told the others to go back to the store, remove Defendant's fingerprints from the door area and, as if to buy cigarettes, pretend to discover the body, and report that Prather had been shot. They tried to carry this out, but in the course of police questioning, they confessed to their roles in the crime and stated that Defendant told them he had shot Prather. Meanwhile, Defendant tried to cover up the crime by treating his hands with wax to remove gunpowder residue, setting fire to the clothes he was wearing and other evidence, and hiding the gun. Defendant told his girlfriend to say he was with her at the relevant time. Defendant later confessed to the killing.

*STANDARD OF REVIEW*

{7} The sufficiency of the evidence is reviewed pursuant to a substantial evidence standard. *State v. Sutphin,* 107 N.M. 126, 131 753 P.2d 1314, 1319 (1988). "[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We will not substitute our judgment for that of the fact finder, nor will we re-weigh the evidence. *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

*DISCUSSION*

{8} The basis for concluding that there was insufficient evidence to support a conviction, under the aggravating circumstance of the murder of a witness, is that the facts are insufficient to support the conclusion that Defendant shot Prather because Prather could be shown to have had the intent to report the crime of the ongoing robbery. We take as our analytical starting point *Garcia,* 114 N.M. 269, 837 P.2d 862. In that case, the evidence was that the defendant

and the ultimate victim, Gutierrez, had a history of animosity. *Id.* at 270, 837 P.2d at 863. On the day of the killing, these two and some others bought some liquor and went to a house where a party was going on. *Id.* Garcia and Gutierrez began arguing. *Id.* They appeared to reconcile but then resumed arguing. *Id.* They were told to "take it [their argument] to the street." Garcia remarked, "Remove [him] away from me or you're not going to be seeing him for the rest of the day." *Id.*

{9} The trial court in *Garcia* denied a defense motion for directed verdict on the charge of first-degree premeditated murder, and the defendant was convicted by the jury. *Id.* at 271, 837 P.2d at 864. Considering the difference between first- and second-degree murder, we reversed, holding that the evidence was insufficient to support a first-degree murder conviction because no rational jury could have found premeditation and deliberation beyond a reasonable doubt. *Id.* at 274, 837 P.2d at 867. We said the appellate court's role in such a situation is to determine whether *any* rational jury could have found each element of the crime beyond a reasonable doubt:

> This does not involve substituting the appellate court's judgment for that of the jury in deciding the reasonable-doubt question, but it does require appellate court scrutiny of the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction.

*Id.*

{10} "The legislature has given us the responsibility to review death sentences on appeal and determine whether the evidence supports the jury's finding of a statutory aggravating circumstance. In assessing the death penalty we must apply that 'greater degree of scrutiny' called for by the Constitution." *Henderson,* 109 N.M. at 660–61, 789 P.2d at 608–09 (citation omitted). The manner of killing in this case, three gunshots at close range, including one in the eye, supports an intent to kill. *See Jackson,* 443 U.S. at 325, 99 S.Ct. 2781. However, we do not

believe that this evidence supports the further intent to kill Prather for the purpose of preventing the report of a crime. Additionally, although Defendant sought to conceal his identity and attempted to cover up the crime, this evidence alone is inadequate to support the specific intent required by Section 31–20A–5(G) because there existed other plausible motives for the killing. *See Henderson,* 109 N.M. at 660, 789 P.2d at 608 (stating that such evidence can be sufficient to support this aggravating circumstance when there is a "lack of other plausible motive").

{11} Finally, we acknowledge that the evidence, including Defendant's statement, indicates that Prather grabbed the telephone immediately before being shot, supporting an inference that Prather intended to call the police. Nevertheless, we do not believe that this evidence, even when viewed in conjunction with the other evidence, supports a reasonable inference that Defendant formed a specific intent to kill for the purpose of preventing the report or a crime. According to the record, only a few seconds elapsed between Prather's reaching for the telephone and the shooting. While it is true that "[a] calculated judgment and decision may be arrived at in a short period of time," UJI 14–201 NMRA 2002, we believe that the paucity of additional evidence supporting an inference of a specific purpose to prevent the report of a crime, coupled with the heightened scrutiny that we are bound to apply in cases involving the extraordinary penalty of death, counsels against reliance on this rule in the present case.

{12} Our conclusion that there is insufficient evidence to support the aggravating circumstance in this case is reinforced by the actions of the prosecutor and the trial judge. At the close of the State's case in chief, Defendant moved for a directed verdict on the charge of deliberate intent first degree murder. Following a discussion among the trial judge, the prosecutor, and defense counsel, the prosecutor agreed to dismiss the charge, and the trial judge accepted the dismissal. The State argues before this Court that the dismissal of the charge did not require the trial judge to rule on the issue of

deliberation. We disagree. Defendant's motion for directed verdict sought a ruling that there was insufficient evidence of a deliberate intent to kill. The prosecutor, by agreeing to dismiss the charge, conceded this claim. The trial judge's decision to accept the prosecutor's acquiescence in the dismissal of the charge is a ruling that as a matter of law the State presented insufficient evidence to establish a deliberate intent to kill, and this ruling operated as a acquittal on the charge of deliberate intent first degree murder. *See County of Los Alamos v. Tapia,* 109 N.M. 736, 739, 790 P.2d 1017, 1021 (1990).("[A] defendant who demurs to the evidence as 'insufficient to establish his factual guilt' has been acquitted ....") (*quoting Smalis v. Pennsylvania,* 476 U.S. 140, 144, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986)). It would be anomalous for this Court to conclude that there was sufficient evidence of a specific intent to kill for the purpose of preventing the report of a crime when the prosecutor and the trial judge determined that there was not an adequate opportunity for "careful thought" or a "calculated judgment," especially considering the gravity of the penalty at issue.

{13} For these reasons, we conclude that the State failed to present sufficient evidence to support a finding beyond a reasonable doubt of the essential elements of the aggravating circumstance of murder of a witness for the purpose of preventing the report of a crime. Accordingly, the judgment of the trial court is reversed and the case remanded for imposition of life sentence. In light of this reversal, we need not review the remainder of the issues raised by Defendant on appeal.

{14} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, GENE E. FRANCHINI, and PAMELA B. MINZNER, Justices.